JULIUS C. WILLIAMS, *Appellant,* v. J. W. BRICKER
et al., *Appellees.*

No. 16,611.

SYLLABUS BY THE COURT.

1. TITLE—*Doubtful or Nonmerchantable.* A title need not in
fact be bad in order to make it unmarketable or nonmer-
chantable. The question is· whether a reasonably prudent
man, familiar with the facts and apprised of the question of
law involved, would accept the title in the ordinary course of
business. Nor is it enough, even, that the court on the whole
consider it good. If there be doubt or uncertainty sufficient
to form the basis of litigation, the title is unmarketable.

2. ——— *Action to Recover Purchase Money—Determination of
Question of Law upon which Sufficiency of Title Depends.* In
an action to recover back purchase money for the failure of
the vendor to comply with an agreement to furnish a market-
able title, where the parties whose possible claims may affect
the title are not before the court, the question of law upon
which the title turns will not be determined, but the title will
be deemed unmarketable if the question is one upon which it is
apparent that other courts might entertain a different opinion.

Appeal from Cowley district court. Opinion filed
July 9, 1910. Reversed.

· *J. E. Torrance,* for the appellant.

*A. M. Jackson,* and *A. L. Noble,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiff and defendant J. W.
Bricker entered into a written agreement for the pur-
chase and sale of a farm in Cowley county. The con-
sideration was $35,200. The plaintiff deposited in the
bank $1000, which was to be paid to Bricker provided
he should, within a specified time, deliver to the plain-
tiff a warranty deed for the real estate, "with a good
and merchantable abstract of title to the same," when
the plaintiff was to pay the balance of the purchase
money. Alleging that Bricker had failed to furnish

such title, the plaintiff brought this action against him and the bank to recover the $1000. Bricker answered with a general denial, and a cross-petition alleging that he had fully complied with the terms of the contract, that the land thereafter depreciated in market value $10 an acre, and asked damages in the sum of $3200 against the plaintiff for breach of the contract. There was a trial to the court and a finding that the title tendered was a good, merchantable one, that the averments in the cross-petition were true, and that the plaintiff had forfeited the $1000 paid; and the court rendered a judgment against him for $3200 damages and for costs. For obvious reasons the plaintiff was dissatisfied with the result of the litigation and brings the case here for review.

The only question we have to determine is whether Bricker tendered to the plaintiff a merchantable title. The land originally belonged to Charles Louis Wiltberger. He died leaving a will, which was duly probated, and by the terms of which he devised to his wife, Emorette A. Wiltberger, a life estate in all his property, and provided that after her death the property should be equally divided among his four children, Walter, Ella, Frank L. and Dora A. Wiltberger. The will then directed as follows:

"If any of my children shall die before my wife, Emorette A. Wiltberger, then it is my will that the share which should go to my deceased child or children, if living, shall be divided among his or her children in equal parts; and if any of said children shall die without issue, prior to the death of my said wife, then it is my will that his or her share shall be divided equally among my children then living, or if any of them be dead, then, his or her share, equally among her children."

After the death of Charles Louis Wiltberger his widow and the four children named in the will conveyed the land in question by warranty deed to defendant Bricker, and his title rests upon the will and this

conveyance. The widow is still living. Subsequent to the execution of the deed Frank L. Wiltberger died, leaving surviving him two minor children, and the doubt or menace to the title, if any exists, arises by reason of the possible claim that these children, at the death of their father before that of the widow, took the title which would have vested in him if he had survived the widow, and also the possibility of similar claims in the future by the children of Walter, Ella and Dora Wiltberger in the event they or any of them die before the widow, leaving children.

Bricker concedes that the only question is whether the title was merchantable, but insists that whether or not it is so is always a question of law and not of fact, and that the only way by which this controversy can be rightly determined is by an examination of the will in question and a determination by the court in this action as to whether under the will the fee to the lands in question vested in the four children of the testator at the time of his death. If it did, counsel say the title is merchantable and the judgment must stand. Such is not our understanding of the law which must control this case. Whether the title is merchantable depends upon whether it is free from reasonable doubt. In *McNutt v. Nellans,* 82 Kan. 424, it was said:

"In determining whether a title is so doubtful that equity will refuse to compel a purchaser to accept it the court is not required to pass upon the validity of the title itself; the parties whose possible claims may affect the title are not before the court, and no judgment which the court could render would bind them. . . . A marketable title in equity is one in which there is no doubt involved, either as to matter of law or fact. (Maupin Mark. Title to Real Estate, 2 ed., ch. 31; *Herman v. Somers et al., Appellants,* 158 Pa. St. 424; *Fleming et al. v. Burnham et al.,* 100 N. Y. 1; *Vought et al. v. Williams,* 120 N. Y. 253.)" (p. 428.)

The same rule applies where the question of the sufficiency of the title is raised in an action for specific per-

formance, for the reason that the distinction which formerly prevailed between courts of law and equity with respect to marketable titles no longer exists. The same grounds which would justify a court of equity in refusing to compel the vendee to accept the title will now support a judgment to recover back the purchase money paid. (*Ladd v. Weiskopf*, 62 Minn. 29; *Moore v. Williams*, 115 N. Y. 586; *Howe v. Coates*, 90 Minn. 508.)

"It is a great, though perhaps a common, mistake to suppose that a doubtful title can be made marketable by an opinion of a court on a case stated between vendor and vendee." (*Pratt v. Eby*, 67 Pa. St. 396, 404.)

*In Townshend v. Goodfellow*, 40 Minn. 312, it was said:

"It is not necessary that the title be shown to be bad, nor is it enough, even, that the court may on the whole consider it good, if there be doubt or uncertainty about it sufficient to form the basis of litigation; for if there be a doubt it can not be thrown upon the purchaser to contest that doubt. . . . The devisees, including infant heirs, are not parties, and would not be bound by the judgment of the court in this case." (pp. 316, 319:)

In his classification of cases in which the title will be held doubtful, Maupin, in section 284 of the second edition of his work on Marketable Title to Real Estate, enumerates these cases:

"(1) Where the probability of litigation ensuing against the purchaser in respect of the matter in doubt is considerable; or, as it was put by Alderson, B., where there is a 'reasonable decent probability of litigation.' The court, to use a favorite expression, will not compel the purchaser to buy a lawsuit. If there be any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the title will be deemed unmarketable.

"(4) Where the title depends on the construction and legal operation of some ill-expressed and inartificial instrument, and the court holds the conclusion it

arrives at to be open to reasonable doubt in some other court.  Generally, it may be said that the opinion of the court upon any question of law on which the title depends will not render the title marketable if the court thinks that another judge or other competent person might entertain a different opinion upon the same question.  The test as to whether a title is doubtful or not upon a question of law has been held to be the certain conviction of the court, in deciding the point, that no other judge would take a different view."

Authorities might be multiplied to show that the rule is well established that the title tendered need not in fact be bad in order to make it unmarketable or nonmerchantable.  The question is whether a reasonably prudent man, familiar with the facts and apprised of the question of law involved, would accept such a title in the ordinary course of business.

The will of Louis Wiltberger clearly expressed the purpose that his widow should take a life estate in the real property in question, that at her death it should pass to such of his four children as should then be living and to the children of any of the four who had died, the grandchildren to take collectively the shares that would have gone to their respective parents. After the death of the testator his widow and his four children united in a warranty deed to J. W. Bricker, and the question involved is whether this deed conveyed a perfect and merchantable title.  When the deed was made the widow had a life estate, the four children a vested remainder (subject to be devested by their dying before the life estate ended), and the children of these children (there were at least two of them then in being) a contingent remainder.  Defendant Bricker contends that the general doctrine of *Bunting v. Speek,* 41 Kan. 424, controls, although the language of the will there construed differs materially from that of the will in this case; that, under the terms of this will, upon the death of the testator the fee title to the lands vested in the four children of the testator, subject to the life es-

tate of the widow, and subject to being devested by their death before the widow, leaving children surviving them; that the limitation over to the children of the children, depending as it does upon an event which may or may not happen, can not have the effect to retard the vesting of the fee in the children of the testator. It is claimed therefore that with the execution of the deed the life estate and the vested remainder united in the same person, and therefore merged, and that the contingent remainder then expired because there was no longer a life estate to which it could attach. This result would doubtless follow where the unmodified common law prevails. (16 Cyc. 656; 24 A. & E. Encycl. of L. 413.) It might, however, be seriously questioned whether it follows in Kansas, for this reason, among others: Here the union of two estates in one person does not necessarily result in a merger. (*Loan Association v. Insurance Co.*, 74 Kan. 272; *Shattuck v. Bank*, 63 Kan. 443.) The merging of two estates by their union in a single individual is purely a matter of theory. The two estates are conceived as remaining separate whenever that view is to the advantage of their holder. There is the more reason that they should be kept apart when their merger would operate to the prejudice of one who is not a party to the transaction.

"At law, the rule that whenever a greater estate and a less coincide in the same person, without any intermediate estate, the lesser is merged, is invariable and inflexible. In equity, the rules of law as to merger are not followed, and the doctrine of merger is not favored. Equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties. Whenever a merger would operate inequitably it will be prevented. . . . In equity the merger will be prevented whenever necessary to protect the rights of an innocent third party, or of the person in whom the estates meet." (16 Cyc. 665, 668.)

Williams v. Bricker.

"In equity the legal rule of merger is not regarded as inflexible, and the question whether the doctrine of merger will be applied or not is determined by the intention of the party in whom the estates unite, provided that his intention shall not be enforced to perpetrate fraud or wrong. . . . The equitable doctrine has superseded the legal doctrine almost entirely at this day; for in England the equitable doctrine controls in courts of law by statute; while in many of the United States equitable remedies can be had in courts of law." (20 A. & E. Encyl. of L. 590, 591.)

"Merger takes place when a greater and a less estate come together in the same person, and when there is no reason for their longer existence as separate estates. The doctrine has its foundation in the convenience of the parties interested, and therefore whenever the rights of strangers, not parties to the act that would otherwise work an extinguishment of the particular estate, require it, the two estates will still have a separate continuance in contemplation of law." (*Moore v. Luce*, 29 Pa. St. 260, 263.)

It might well be argued that a merger ought not to be allowed in this case because it would defeat the purposes of the testator and deprive his grandchildren of their rights under the will. Since, however, no decision we could render would bind those whose possible claims may affect the title, and any opinion we might express would be merely *obiter,* it is unnecessary to pass upon the question of law upon which the sufficiency of the title depends. Enough has been said to demonstrate that the question is one upon which other courts might entertain a different opinion, and that, of itself, is a sufficient reason for holding the title tendered unmarketable.

The judgment is reversed, with directions to proceed in accordance with these views.