No. 18,945.

J. M. BULLOCK, *Appellant,* v. LENORA ADEL WILTBERGER et al., *Appellees.*

SYLLABUS BY THE COURT.

1. WILLS—*Construction—Testator's Intention Must Control.* It is the testator's intention which must always control in the construction of a will, and this must be gathered from the language of the entire will interpreted by the application of legal principles.

2. SAME—Sometimes technical rules must be applied because the intention is obscured by vague or doubtful expressions, but such rules of construction ought never to be resorted to where their application defeats the manifest intention of the testator.

3. SAME—*Merger—Doctrine Not Employed to Defeat Intent of Testator.* The doctrine of merger, which is largely a matter of theory, ought not to be employed to defeat the intent of the testator and to extinguish the rights of persons who are strangers and not parties to the transaction.

Bullock v Wiltberger.

4. SAME—*The Two Following Paragraphs of Will Construed.*
Two paragraphs of a will read in substance as follows:

"*Third:* After the death of my said wife it is my will that
all of my property both personal and real . . . shall be
divided equally among my four children [naming them].

"*Fourth:* If any of my said children shall die before my
wife . . . then it is my will, that the share which would
go to my deceased child or children if living, shall be divided
among his or her children in equal parts; and if any of said
children shall die without issue, prior to the death of my
said wife, then it is my will that his or her share, shall be
divided equally among my children then living, or if any
of them be dead, then, his or her share, equally among their
children."

After the testator's death and the probate of the will the
widow and the four children named in paragraph three joined
in a conveyance to the grantor of the plaintiff. The widow
is still living, but one of the four children of the testator has
since died leaving minor children who are defendants in this
action to quiet title. *Held:*

(*a*) That the manifest intention of the testator was that
his estate should be kept intact until the death of his wife
and was then to be divided among his children and the heirs
of such as may then be deceased.

(*b*) That each of the four children of the testator took
contingent remainders, the contingency being that they should
survive the testator's wife; and failing in this, as to any one
or more of them, the remainder vested in his or their repre-
sentatives by purchase.

(*c*) There was no merger of the life estate and the fee by
virtue of the conveyance to plaintiff's grantor.

Appeal from Cowley district court; CARROLL L.
SWARTS, judge. Opinion filed July 7, 1914. Modified.

*Charles W. Roberts, A. M. Jackson,* and *A. L. Noble,*
all of Winfield, for the appellant.

*J. E. Torrance,* of Winfield, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This is an action to quiet title to the
same land and involves the construction of the same
will considered in the case of *Williams v. Bricker,* 83
Kan. 53, 109 Pac. 998, decided in 1911. That was an
action by a vendee to recover from the vendor money

for the failure to comply with an agreement to furnish a marketable title. It was there held that inasmuch as the title turns upon questions about which courts might entertain different opinions, it was not a marketable title, but the court refrained from deciding whether or not the title was good, for the reason that the persons who might be interested as possible claimants were not parties to the action.

While the former action was pending Bricker, the vendor, who was the defendant, sold and conveyed the land to J. M. Bullock, who subsequently brought this action, joining as defendants all the persons in being who could possibly claim any interest in the land as heirs or devisees of Charles L. Wiltberber, deceased. The real estate was owned by the testator at the time of his death. He left as his heirs at law his widow and the four children named in the third paragraph of the will.

It is conceded that in the second paragraph of the will the testator devised to his wife a life estate in all his property. The whole controversy arises over the construction of the third and fourth paragraphs of the will, which read:

"*Third:* After the death of my said wife, it is my will that all of my property, both personal and real, wherever situated, being at present in the state of Kansas, Illinois and South Dakota, shall be divided equally among my four children, namely: Walter O. Wiltberger, Ella L. Wiltberger, Frank L. Wiltberger and Dora A. Wiltberger.

"*Fourth:* If any of my said children shall die before my wife, Emoretta A. Wiltberger, then it is my will, that the share which would go to my deceased child or children if living, shall be divided among his or her children in equal parts; and if any of said children shall die without issue, prior to the death of my said wife, then it is my will that his or her share, shall be divided equally among my children then living, or if any of them be dead, then, his or her share, equally among their children."

Bullock v. Wiltberger.

After his death and the probate of the will the widow and the four children named in paragraph three joined in a conveyance to Mr. Bricker, the grantor of the plaintiff. The defendants in the present action are the widow of the testator, who is still living; the widow and children of Frank L. Wiltberger, who died since making the conveyance; Walter O. Wiltberger and his wife and children; and Ella L. and Dora Wiltberger, who are still unmarried. The district court heard the case upon an agreed statement of facts and rendered judgment against the plaintiff, holding that the four children of Frank L. Wiltberger, deceased, take as remaindermen an undivided one-fourth interest in the real estate after the expiration of the life estate devised to the widow of the testator, and holding also in favor of the children of Walter O. Wiltberger to the extent of another undivided one-fourth interest contingent upon the death of their father before that of the life tenant. The plaintiff appeals from the judgment, contending that his title should have been quieted as against all the defendants.

The first point urged is that "paragraph three gives to the four children of the testator a fee simple title with full power of disposition in language free from ambiguity, and therefore paragraph four is repugnant to paragraph three and void." The cases relied upon in support of this contention are *McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965, and the authorities cited in the opinion in that case; also *Holt v. Wilson,* 82 Kan. 268, 108 Pac. 87. While this contention was urged in the briefs in the case of *Williams v. Bricker,* supra, it was not passed upon in the opinion or referred to, for the reason that the only point in that case was whether the questions involved sufficient doubt and uncertainty to render the title unmerchantable. The contention therefore is fairly before us for determination.

In *McNutt v. McComb,* supra, the language used by the testator in the first clause was substantially as follows:

"I hereby devise and bequeath unto my beloved wife, Lucinda Burke, . . . all my estate, real, personal and mixed."

This was held to create an uncontrolled power of disposition of all the real estate, vesting in the widow an estate in fee simple. In the second clause the testator attempted to direct that at the death of his wife whatever might then remain of his estate be divided between his three children (naming them), and this clause was held void because it contained directions inconsistent with the absolute interest vested in the widow by the first clause. In the opinion the case of *Williams v. McKinney,* 34 Kan. 514, 9 Pac. 265, was distinguished by the fact that there, in the same sentence in which the testator made the bequest to his wife of all the residue of his estate, he also made a "bequest" that at his death the property should go to the testator's three children. In the case at bar the two provisions appear in separate clauses in the same way as in the will in *McNutt v. McComb,* supra. To that extent at least the cases are parallel. We think, however the general rule is that the arrangement of the terms is not regarded as controlling, although it is often considered as a circumstance by courts in attempting to determine the intent of the testator.

It is the testator's intention which must always control in the construction of a will, and this must be gathered from the language of the entire will interpreted by the application of legal principles. (*Hawkins v. Hansen,* ante, p. 73, 139 Pac. 1022, and ante, p. 740.) Sometimes technical rules must be applied because the intention is obscured by vague or doubtful expressions. (*Safe Deposit Co. v. Stich,* 61 Kan. 474, 478, 59 Pac. 1082; *Holt v. Wilson,* 82 Kan. 268, 108 Pac. 87.) Techincal rules of construction ought never

to be resorted to where their application defeats the manifest intention of the testator.

In the present case the testator begins the paragraph in which he states his intention respecting the division of his property among his four children with the qualifying expression: "After the death of my wife." In other words, his property was not to be divided among his four children until after that event. Is there anything repugnant therefore in that part of the subsequent provision which reads that "If any of my said children shall die before my wife . . . then it is my will, that the share which would go to my deceased child or children if living, shall be divided among his or her children in equal parts"? On the contrary. it seems entirely consistent with the preceding clause, and manifests an intention that the four children were not to take unless they survived the widow. Having given to them this contingent estate, it was still within the power of the testator to say what should become of his estate in the event any or all of the four persons named in the second clause should not survive the life tenant. For the same reasons it can not be said, we think, that it was inconsistent or repugnant for him to provide in the fourth clause that if any of the four children should die without issue prior to the death of the testator's children then living, or if any of them be dead then his or her share should be divided equally among their children.

*Holt v. Wilson*, supra, is not a parallel case. It would be more in point if the fourth clause of the will in this case had attempted to dispose of the remainder in case of the death of any of the testator's four children *after* the death of the testator's wife. The subsequent language of the will in *Holt v. Wilson*, which was held to be repugnant, provided as follows:

" 'But if the said William N. Holt shall die without issue, either before or *after* the first legatee's estate expires, then and in that case, I direct that the whole of said estate be and the same is bequeathed and given to Martha M. Wilson or her heirs.' " (p. 269.)

Moreover, the subsequent provisions in that case considered together contained vague or doubtful expressions. The rule stated in 2 Underhill, Law of Wills, § 689, was applied, as follows:

" 'Where property is given in clear language sufficient to convey an absolute fee, the interest thus given shall not be taken away, cut down or diminished by any subsequent vague and general expressions.' " (p. 273.)

In the opinion it was also said:

"Mr. Redfield in the following language states the rule as a qualification of the general rule that the intention of the testator must prevail: 'A clearly expressed intention, in one portion of the will, is not to yield to a doubtful construction in any other portion of the instrument.' (1 Redfield, Law of Wills, p. *433)." (p. 273.)

There are no vague, ambiguous or doubtful expressions in the fourth clause, so that if we simply follow the general rule and construe the whole will together, his intention is manifest.

In *Coleman v. Coleman,* 69 Kan. 39, 76 Pac. 439, the will read substantially as follows:

" 'I give and bequeath to my children [naming them] . . . all of my estate. I also desire that none of my real estate shall be sold . . . until the youngest surviving child shall arrive of age, and in case either one of them shall die without heirs or legal representatives of his own, the survivors shall take his portion of the said estate equally." (p. 44.)

It was held that "the remainder over to the surviving children in the event of the death of one of them is consistent with the entire will." (p. 44.)

In *Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288, the rule was recognized that courts will favor the vesting of estates and a vested remainder rather than a contingent remainder, and that no remainder may be construed to be contingent "which may, consistently with the words used and the intention expressed, be deemed vested" (syl. ¶ 2) ; and it was said that to create a contingent remainder "the intent so to do must be ex-

Bullock v. Wiltberger.

pressed in words so plain that there is no room for construction" (syl. ¶ 1). In that case the testator, after bequeathing all of his estate, real and personal, to his wife during her lifetime, added the words: "and then they are to descend to my legal heirs. "A marked distinction between that will and this consists of the absence in the third paragraph in this will of any express words devising or bequeathing the estate to the four children. In substance, the language is, "After the death of my wife I direct that my estate shall be divided equally among my four children." Of course, the contention of appellants is that the children took a vested remainder; that only the enjoyment of their estate was postponed until the death of the widow. In the great wilderness of cases upon the subject it can not be doubted that many may be found which support that construction, but it seems to us clear that the intention of the testator was that his estate should be kept intact until the death of his wife, and was then to be divided among his children and the heirs of such as may then be deceased.

The North Carolina court had before it for construction a will with substantially the same provisions. In *Bowen v. Hackney*, 136 N. Car. 187, 48 S. E. 633, 67 L. R. A. 440, the testator devised the property to his wife for life, followed in a subsequent part of the will with a direction that at the expiration of the life estate of his wife the property should be equally divided among his children, share and share alike, "the representatives of such as may have died to stand in the place of their ancestors." (p. 188.) The court held it to be the manifest intention that the gift in the subsequent item or clause should take effect finally and absolutely according to the state of his family as it existed at the death of his wife, and that a condition precedent was annexed to the gift which would prevent its vesting in any child unless he or she should survive the life tenant. It was held, therefore, that each of the testator's children took contingent remainders, the contingency be-

ing that they should survive their mother; and, "failing in this, as to any one or more of them, the remainder vested in his or their representatives by purchase" (p. 192), citing *Whitesides v. Cooper,* 115 N. Car. 570, 20 S. E. 295, and that this would be the limitation of concurrent fees to take effect alternatively, or as substitutes one for the other; citing Fearne, Contingent Remainders, 3d Am. ed., p. 373. The opinion cites and relies upon *Hunt v. Hall,* 37 Maine, 363, where the limitation was in substantially the same language as the will in the case at bar. The language was:

"After the decease of my dear wife, my will is that my executor hereafter named cause an equal division to be made among all my children and the heirs of such as may then be deceased." (p. 364.)

The supreme court of Maine said:

"The persons who are to take are not those who are living at the death of the testator. The division is not then to take place. This is to be done at a subsequent and uncertain period. If the estate were to be construed as vesting at the death of the testator, an heir might convey by deed his share of the estate; and if he should decease before the termination of the life estate, leaving heirs, his conveyance would defeat the estate of such heirs. This would be against the express provisions of the will, which provide that the estate shall be divided 'among his children and the heirs of such as may then be deceased.' By the terms of the will, the estate is not to vest until after the death of the widow, and then the division is to ensue. Till then there is a contingency as to the persons who may take the estate." (p. 366.)

In the opinion in *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998, it was said:

"The will of Louis Wiltberger clearly expressed the purpose that his widow should take a life estate in the real property in question, that at her death it should pass to such of his four children as should then be living and to the children of any of the four who had died, the grandchildren to take collectively the shares that would have gone to their respective parents. . . . When the deed was made the widow had a life

estate, the four children a vested remainder (subject to be devested by their dying before the life estate ended), and the children of these children (there were at least two of them then in being), a contingent remainder." (p. 57.)

It would have perhaps been more accurate' to have said that both the children and grandchildren take contingent remainders.

*Haward et al. v. Peavey,* 128 Ill. 430, 21 N. E. 503, seems to be a parallel case. There the testator devised all his estate in trust for the support of his widow, and provided that on her death or marriage the residue of the estate should be divided equally among his five children, "or such of them as should then be living, or the lawful issue of such as might be dead." In the opinion it was said:

"It is plain that in the present case the estate devised was, so far as Robert Haward was concerned, subject to a contingency, viz., his being alive at the time the particular estate should be determined by the death or remarriage of the widow. Whether this contingency constituted a condition precedent or subsequent must be determined by the language of the will." (p. 439.)

The court held that, construing the entire language of the will, the devise was not to Robert Haward, nor to him and his three brothers, but only to such of the four as should be alive at the death or remarriage of the widow, and it was said in the opinion that if one or more of the sons named had died before the death of the widow it would have been doing violence to 'the language of the will to hold that any estate was thereby vested in them. They would have been excluded by the very terms of the will from the number of those named as 'beneficiaries. It was therefore held that the persons to whom the estate would eventually go, being wholly uncertain and dubious during the existence of the particular estate, the contingency was a condition precedent to the vesting of the estate, and that until the condition happened the estate was necessarily contingent.

To the same general effect are *Nash v. Nash & others,* 94 Mass. 345; *Thomson v. Ludington,* 104 Mass. 193; *Cummings et al. v. Hamilton,* 220 Ill. 480, 77 N. E. 264; *Allison v. Allison,* 101 Va. 537, 44 S. E. 904; 63 L. R. A. 920; *Wilson, &c., v. Bryan, &c.,* 90 Ky. 482, 14 S. W. 533.

From what has been said we think it follows that the appellant can not rely upon the doctrine of merger. We adhere to what was said in the opinion in *Williams v. Bricker,* supra, upon this question. The grandchildren, who are the appellees, were not parties to the conveyance. As said in the former opinion, quoting from *Moore v. Luce,* 29 Pa. St. 260:

"Merger takes place when a greater and a less estate come together in the same person, and when there is no reason for their longer existence as separate estates. The doctrine has its foundation in the convenience of the parties interested, and therefore whenever the rights of strangers, not parties to the act that would otherwise work an extinguishment of the particular estate, require it, the two estates will still have a separate continuance in contemplation of law." (p. 263.)

Here there is a reason for their longer existence as separate estates. The doctrine of merger, which is largely a matter of theory, ought not to be employed to defeat the intent of the testator and to extinguish, as it would in this case, the rights of the grandchildren, who are strangers and not parties to the act relied upon as merger.

"If the inheritance is given to the donee of the particular estate by the same instrument creating the contingent remainder, the estates will not merge so as to defeat such remainder." (16 Cyc. 656.)

The judgment is affirmed so far as it concerns the construction of the will, but must be modified in one respect. Until the death of the testator's wife there is a contingency as to the persons who may take the estate, and so much of the judgment as attempts to quiet the title of grandchildren whose parents are still living is erroneous. It will be modified to this extent.