No. 32,799

In re Estate of August Knackstedt, Deceased (THE BANK OF INMAN, *Appellee*, v. CARL A. GRANT, as Special Executor of the Estate of August Knackstedt, Deceased, and PHINE RUMP, *Appellants*).

(57 P. 2d 416)

Opinion filed May 9, 1936.

*George L. Allison, James A. Cassler, L. H. Ruppenthal*, all of McPherson, and *W. H. Carpenter*, of Marion, for the appellants.

*J. R. Rhoades, George R. Lehmberg* and *John K. Brandon*, all of McPherson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal from the ruling of the district court affirming the order of the probate court in probating a codicil

to a will. No pleadings were filed in the probate court, but upon appeal to the district court answers were filed in that court alleging reasons why the codicil should not be admitted to probate. The following is the instrument offered for probate as a codicil:

"It being my desire to protect the Bank of Inman, of Inman, Kansas, from a loss on a note given them by E. J. Rump, one of my grandsons, I request the probate court of McPherson county, Kansas, to allow a claim against my estate after my death for the unpaid amount which is thirteen hundred forty-seven dollars and eleven cents ($1,347.11), the same to draw six (6) percent from January 4, 1932, not to be compounded.

"This amount to be deducted from the part of the estate due my daughter, Mrs. Henry Rump.

. "Signed at Inman, Kansas, this 4th day of January, 1932.

"AUGUST KNACKSTEDT.

"Witnesses: Anna B. Blake, Fred W. Baerg."

There is no question about the will and earlier codicil. The will was executed in 1918 and consisted of four provisions: first, payment of debts; second, directions to carry out terms of antenuptial contract; third, balance of property to be divided equally among his eleven children, including the daughter, Phine Rump, or Mrs. Henry Rump; and fourth, the naming of executors. Ten years later, in 1928, the testator executed a codicil to his will changing the executors and naming A. Bartels as such. About four years later, on January 4, 1932, he executed the above-quoted instrument.

The testator died on November 9, 1932. The will and first codicil were filed and admitted to probate November 28, 1932. On January 12, 1933, the president of the Bank of Inman filed the above-quoted instrument as a claim against the estate, making service upon A. Bartels, the executor, who was also cashier of the bank. Thereafter . a special administrator was appointed by the probate court to represent the estate in regard to this claim of the bank. On February 22, 1933, the same instrument was filed as a codicil to the will of the deceased, and formal affidavits were made before the probate judge by both of the witnesses to the signature of the deceased to said instrument, and on the 1st day of March, 1933, the probate court admitted the instrument to probate as a codicil. Appeal was taken to the district court and answers filed. After the introduction of evidence by the bank a demurrer was filed to the evidence of the bank and was overruled by the trial court on September 14, 1934. Later evidence was introduced in defense and on rebuttal, and judgment was rendered by the trial court on August 9, 1935, affirming the decision of the probate court. On September 19,

1935, the motion for a new trial was overruled, and five days later notice of appeal was served.

Several errors are assigned by appellants, which are argued under five different headings.

The bank raises a preliminary question as to the right of appellants to be heard on matters involved in the ruling on the demurrer to the evidence of the bank, for the reason that the appeal was not taken within six months after the demurrer was overruled. To this proposition the attorney for Mrs. Henry Rump in a supplemental brief states the rule does not apply to her for the reason that she first appeared in district court as an intervener by her attorney, W. H. Carpenter, after the ruling on the demurrer, and by stipulation the evidence introduced prior thereto was not again introduced. This is supported by the language of the demurrer given in the abstract which commences with the words, "The defendant demurs." The defendant referred to was the special administrator, and Mrs. Rump is referred to as the intervener. The record, however, whether correct or not, indicates that Mrs. Rump was in the case as an intervener prior to the time she was represented by Mr. Carpenter. The journal entry of the probate proceedings states that she appeared in person and by her attorney, Mr. Cassler, and that she and the special administrator appealed to the district court. Likewise, the journal entry of the proceedings names her as an intervener appearing from the very beginning of the trial in the district court by her attorney, Mr. Cassler. Under these circumstances we cannot relieve her from the consequences of the ruling on the demurrer without taking an appeal from such ruling within six months.

The usual scope as to the questions involved in overruling a demurrer to the evidence is general, but in this particular case the trial court limited its ruling on the demurrer to two grounds; first, as to the competency of the witnesses signing the instrument, one of whom was a stockholder in the bank that was a beneficiary; and second, that the bank had no power to become a beneficiary under a will or codicil. These were not all the propositions involved and included in the final judgment, as shown by the same journal entry, among which findings was the following:

". . . and that said instrument should be admitted to probate and recorded as a codicil to the last will and testament of said testator."

The fact that there were other and further things to be determined than those two mentioned in the ruling on the demurrer to the evi-

dence is shown also by the stipulation made immediately after the submission of the demurrer in the following language:

"It is stipulated and agreed that all questions as to the claim allowed in favor of the Bank of Inman be reserved for further hearing."

The only possible claim at that time to which such reference could apply was the probating of the instrument as a codicil in which an allowance was mentioned. It could not possibly refer to the claim filed by the bank against the estate, which the bank had abandoned six weeks after filing it. If it concerns the second attempt, it all depends upon the question of the instrument being a codicil. If it is a lawful and intended codicil, of course its provisions must be carried out, including the allowance of claims as well as other provisions contained therein.

We therefore hold that the naming of only two grounds of determination in overruling the demurrer to the evidence of the bank, and the parties reserving the right to develop special questions which depended necessarily upon the instrument being a codicil, which the trial court finally held the instrument to be, will not limit a review of the general question as to whether or not the instrument is a codicil except as to the two grounds named by the court in its ruling on the demurrer.

Was the instrument above quoted a codicil? We have no statutory definition of such an instrument. General texts and decisions permit and tolerate many defects and omissions to exist in order to effect and carry out the intention and wish of a testator. There are several things about this instrument, aside from the two mentioned in connection with the demurrer, which raise serious doubts as to its being a codicil. Its language is more like a unilateral contract than a codicil. It fails to refer to the will of which it is claimed to be a codicil. It fails to revoke or modify any terms of the will by reference. All these defects have, in many instances, been overlooked, if the intention is unquestionable.

As to the intention of the deceased, we have the fact that he was not without experience in such matters, having made and executed one codicil and having placed it with the will in the office of the probate court. We have no hint, suggestion or thought of this being put with the will and codicil. He did not ask the witnesses to sign the instrument nor tell them what it was. The cashier, Bartels, asked them to sign it, without telling them what it was they were signing, and the deceased "nodded." One witness heard

the deceased say to Bartels after it was signed by the witnesses, "Otto, that fixes it." One witness testified she did not know the nature of the instrument until some time later she read it.

When we try to learn the intention of the deceased when he signed the instrument, we naturally think of the conference between him and the cashier of the bank when he wrote the document, and that in a measure, is naturally reflected by the attitude and conduct of both of them afterward. It can forcibly be said that Bartels did not regard the paper as a codicil for some time after its execution. The deceased lived about ten months after the signing of the instrument. Then Bartels, as executor of the estate, had the will and codicil probated the same month the testator died, but made no attempt, as was his duty, to have this other instrument probated with the will and codicil. After several weeks the officers of his bank filed this document as a claim against the estate, and notice of this claim against the estate was served on Bartels, as executor. About six weeks later the idea was somehow evolved that this document never was a claim against the estate, but all the time had been a codicil. It was the unmistakable duty of the executor when this claim was served on him to at once tell the court it was intended by the deceased, when he wrote it for him, that it was a codicil to his will. With intelligent people, as these undoubtedly were, this would have been the only course, if Bartels had understood the deceased so intended. The contrary course gives us serious doubts as to this instrument ever being thought of or intended by the deceased as a codicil. Without its being intended by the deceased to be a codicil it cannot be such. All the evidence and circumstances are against such being his intention. It is not for others to decide after his death that it had better be a codicil than a claim against the estate.

We cannot overlook the fact that there could be no moral or natural duty on the part of the deceased to take the sum therein mentioned away from a member of his family and donate it, without any return, to a corporation. Counsel for appellee cite many references to texts and decisions as to the right of the testator to do as he wishes in disposing of his property, some of them saying even to the extent of the disposition being unnatural and unreasonable. With these we entirely agree when it is shown to have been his intention so to do. Here we are confronted with an indisputable alternative. Either the deceased did not intend this instrument as

a codicil, or the bank officers, including the executor who wrote the instrument, wholly disregarded his intentions when they filed it as a claim against the estate. We believe the former, and the evidence and circumstances including the language of the instrument do not justify the latter.

It was held in the case of *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950:

"It is the testator's intention which must always control in the construction of a will, and this must be gathered from the language of the entire will interpreted by the application of legal principles." (Syl. ¶ 1.)

There is no conflicting testimony here as to the attitude of the one who wrote the instrument and reflected the intention of the deceased at that time, and therefore the ruling in *McCarthy v. Weber,* 96 Kan. 415, 151 Pac. 1103, does not apply. The evidence of the son as to a conversation with deceased about protecting the bank against loss is more nearly in line with an intention to pay or allow a claim than to make a testamentary devise. We do not believe the construction of the instrument and the unconflicting testimony as to the intent of the deceased make even a prima facie case in favor of the validity of the instrument as a codicil. (*Hospital Co. v. Hale,* 69 Kan. 616, 619, 77 Pac. 537.)

"Whether or not an instrument is testamentary in character depends upon the intention of the maker. It is the animus testandi that makes an instrument a will. When the animus testandi is established, the character of the instrument is fixed and it is a will if the other requirements as to form and execution have been complied with. In the absence of a testamentary intent, there can be no will." (28 R. C. L. 59.)

"In order that an instrument be entitled to probate as a will it must be testamentary in character, and whether it is testamentary in character depends upon the intention of the maker. The animus testandi gives the instrument its testamentary character, and when this is established it is a will if the requirements as to form and execution have been complied with. Where there is no testamentary intent there can be no will." (Thompson on Wills, 2d ed., § 12.)

We conclude that there was no evidence here showing the intention of the deceased to make a codicil other than the instrument itself, and it alone is not sufficient in form and contents to show such to be the intention of the deceased.

The judgment is reversed.