No. 28,493.

J. George Brinkman, *Appellant,* v. The Empire Gas & Fuel Company, *Appellee.*

(274 Pac. 277.)

Opinion filed February 9, 1929.

*Silas Porter,* of Topeka, *B. R. Leydig,* of El Dorado, and *William G. Holt,* of Kansas City, Mo., for the appellant.

*R. B. Ralston,* of El Dorado, *James W. Finley, Hayes McCoy* and *S. N. Hawkes,* all of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff is prosecuting this action to cancel an oil-and-gas lease on certain real property in Butler county, together with all the assignments and conveyances of the lease, to recover damages for the conversion of oil taken from the land described in the lease, and to obtain an injunction enjoining the defendant from drilling and operating on the lease for the purpose of taking therefrom oil or gas, and from removing the oil and gas therefrom, and asks that the amount in value of the oil and gas taken from the lease be ascertained and that judgment be rendered in favor of the plaintiff for the market value thereof. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The controversy is between rival holders of gas leases executed by the owner of the real property at different times. The opinion in *Brinkman v. Empire Gas & Fuel Co.,* 120 Kan. 602, 245 Pac. 107, was rendered in this action on a former appeal to this court on a judgment sustaining a demurrer to the petition on which the action has been prosecuted. The judgment was reversed; the cause was remanded to the district court with directions to overrule the demurrer; that was done; the action has been tried; judgment has been rendered in favor of the defendant; and another appeal has been taken.

The action was tried by the court without a jury, and extensive findings of fact were made, among which were the following:

"First. On and prior to May 26, 1908, Joshua Shriver was the owner of the following-described land, to wit: Northwest quarter of section fourteen, township twenty-six, south of range four east, in Butler county, Kansas; and continued to own and occupy said land until his death, which occurred September 15, 1916. . . .

"Third. On the 26th day of May, 1908, Joshua Shriver and wife and S. R. Walker entered into their certain contract, denominated oil and gas lease, a copy of which is attached to plaintiff's amended petition, under mark of 'Exhibit A,' and in the following findings this instrument will be denominated the Walker lease. This instrument was filed for record in the office of the register of deeds of Butler county, Kansas, March 4, 1909. No holder of this lease has ever commenced a test well in Butler county, Kansas, or drilled a well upon the land in question, or paid any annual rental for delay in drilling. . . .

"Fifth. February 18, 1910, S. R. Walker, in writing, assigned this and other leases to the Mid-Continent Development Company, a corporation, and copy of which instrument is attached to plaintiff's amended petition and marked

'Exhibit B.' This instrument of assignment was filed for record July 9, 1917, then duly recorded, and afterwards delivered by the register of deeds to William G. Holt, one of the attorneys for the plaintiff.

"Sixth. In addition to above lease the said S. R. Walker obtained from other persons similar leases upon some forty-three other tracts of land in Butler county and also a large number in Morris and Chase counties. The Mid-Continent Development Company had employed said S. R. Walker to obtain such leases for it and he did so as the agent of said company, but taking them in his own name. Said company was, at all times, the real owner of said leases. Such employment of S. R. Walker by the Mid-Continent Development terminated January 1, 1910, when he was paid in full for services rendered. . . .

"Eleventh. On the 7th day of August, 1914, the said Joshua Shriver and wife executed and delivered to one W. M. McKnab an oil and gas lease covering said real estate which said W. M. McKnab on the 8th day of August, 1914, in writing on said lease, duly assigned to Alfred J. Diescher, which lease and assignment was on the 21st day of December, 1914, filed for record in the office of the register of deeds of Butler county, Kansas, and copy of which is attached to plaintiff's amended petition as exhibits E and F, and the lease is designated herein as the McKnab lease. . . .

"Fifteenth. After May 26, 1908, when Joshua Shriver and wife executed and delivered the lease to S. R. Walker, neither said Joshua Shriver nor his wife ever saw, met or had any conversation with said S. R. Walker relative to said lease, and they and neither of them ever wrote to, or had any correspondence with the said S. R. Walker, and neither of them ever in writing themselves, or through any agent or person representing them, in writing or otherwise, requested said S. R. Walker, or his assignee of said lease, to either pay rental thereon or to cancel and release the same of record; except as the execution and recording of the McKnab lease may be construed to have been such request or notice.

"Sixteenth. Prior to the execution of the McKnab lease, and on August 4, 1914, S. R. Walker executed and delivered to W. M. McKnab a release of the Walker lease in the following language:

" 'Mr. McKnab, This is to certify that Joshua Shriver's lease given to S. R. Walker in 1908 covering the NW¼ of sec. 14, twp. 26, R. 4, Butler county, Kansas, is null & void & of no effect. The rental not being paid killed this lease & I hereby release same.                S. R. WALKER.'

"This release was sworn to by S. R. Walker before Robert Elliott, a notary public in Cowley county, Kansas, but the certificate was not in form as provided by the statutes of Kansas relating to acknowledgments. [The certificate was as follows: 'Subscribed and sworn to before me this 4th day of August, 1914. Robert Elliott, Notary Public. (seal) My Commission expires Apr. 14, 1917.'] This release was filed for record in the office of the register of deeds of Butler county, August 13, 1914, and recorded in miscellaneous record 'K' at page 477, in that office.

"Sixteenth-A. A short time before, and on August 4, 1914, said W. M. McKnab became and was interested in procuring for himself an oil and gas

lease on the above-described real estate from said Shriver and wife. At that time and for nearly three years thereafter the record title to said 'Walker lease' stood in the name of S. R. Walker, and said McKnab did not know or have any information that anyone else had or claimed any right or title or interest under the said 'Walker lease,' or that said Walker had made any assignment or transfer thereof. Mr. Shriver did not care to deal with McKnab for a lease until the 'Walker lease' had been released. Thereupon McKnab procured from Walker the release of the 'Walker lease' dated August 4, 1914, and relying upon the record and having no information or knowledge that anyone claimed any right, title or interest in or under the 'Walker lease,' and for a valuable consideration paid to said Shriver, McKnab obtained from said Shriver and wife an oil and gas lease denominated 'the McKnab lease.'

"Sixteenth-B. In his amended petition the plaintiff, in effect, admits that the said S. R. Walker executed and delivered a purported release of the 'Walker lease' and in his original reply he did not deny that Walker executed the release dated August 4, 1914, but on the other hand pleaded that it was invalid as a release, because it had not been acknowledged. As a part of its defense the defendant offered this release in evidence, and in rebuttal the plaintiff recalled P. P. Trueheart for further testimony, and upon direct examination he testified that Walker had written him a letter stating that he had released the 'Walker lease,' and we find from the evidence that said Walker did in fact execute and deliver this release. Immediately following this plaintiff placed said S. R. Walker upon the stand as a witness, but no inquiry was made of him as to whether or not he has signed the Walker release; whether or not at the time of signing and delivering the same to McKnab, he told McKnab that said lease was owned by the Mid-Continent Development Company and that he has assigned same to said company; nor as to anything he may have said to McKnab which would have conveyed to him notice of the fact that he, Walker, did not have a right to release said lease, and the inference from this is that if he had been asked about these matters by the plaintiff who produced him upon the witness stand his answers would have been adverse to the plaintiff, and we find as a fact that Walker did sign the said release; that he did not, as alleged in said plaintiff's amended petition, notify said McKnab that he had assigned said lease to the Mid-Continent Development Company; and that he did not give to said McKnab any information which would lead him to suspect that said lease was not owned by the said Walker, and that he, said Walker, did not have a legal right to release the same.

"Seventeenth. At the time of the execution of the aforesaid release, and at the time of the execution of the McKnab lease, and of the assignments thereof from McKnab to Diescher, and from Diescher to the Wichita Natural Gas Company, and from the Wichita Natural Gas Company to the Continental Oil & Gas Company, none of said parties, or corporations, nor any of their officers, had any knowledge of any assignment made by S. R. Walker of the Walker lease to the Mid-Continent Development Company, or of the claim that the Mid-Continent Development Company or anyone else made to the ownership of any interest therein.

"Eighteenth. When McKnab received from Joshua Shriver 'the McKnab lease' he was not an agent of Alfred J. Diescher, or of Wichita Natural Gas Company, or of Continental Oil & Gas Company, or of the defendant herein, and was not in the employ of said Diescher or any of said companies at any of said times. . . .

"Twenty-fifth. After the leases were taken for the Mid-Continent Development Company by Walker in his own name, and before assignment was recorded, July 9, 1917, Walker, with the knowledge and consent of the officers of the Mid-Continent Development Company, executed in his own name releases of many of the leases in Butler county, including the Walker lease involved in this action. During this time he released in his own name many of the leases taken in Morris and Chase counties. In many of these transactions Walker corresponded in relation thereto upon the letterheads of Mid-Continent Development Company and acknowledged the releases before one Charles F. Smythe, a notary public of Jackson county, Missouri, who was a stockholder in the Mid-Continent Development Company, and during a portion of the time was in the employ of that company and occupied a desk in its office. At all such times of making such releases, he was also a shareholder in said company.

### "Conclusions of Law.

"First. The release of 'the Walker lease' made by S. R. Walker, recorded August 13, 1914, in miscellaneous records 'K' at page 477, Butler county, was entitled to be admitted and considered in evidence in the trial of this case and the same is hereby ordered admitted and received in evidence.

"Second. Under the facts in this case the Mid-Continent Development Company, P. P. Trueheart, trustee, and J. George Brinkman, the assignees of said Walker lease, were not grantees, assignees or encumbrancers within the meaning of section 67-237 R. S.

"Third. The plaintiff is estopped from asserting or claiming any right, title or interest under said 'Walker lease' to the real estate or the oil and gas rights therein as against the defendant.

"Fourth. The plaintiff has no interest in the land in question under the 'Walker lease' or in any of the oil produced on said land by the defendant herein.

"Fifth. 'The McKnab lease' is valid and the defendant is rightfully in possession of the land under said lease, and is not required to account to the plaintiff for any oil produced thereunder by the defendant.

"Sixth. Plaintiff should recover nothing from the defendant herein and the defendant should have judgment against the plaintiff for costs."

The Walker lease provided that:

"In case no well is drilled on said premises within one year of date hereof, all rights and obligations secured under this contract shall upon notice in writing by the first party cease, unless the second party shall elect from year to year, thereafter to continue this lease in force as to all or any portion of said premises by paying an annual rental of twenty-five cents per acre for all said premises, or such portion as second party may designate until

well is drilled on said premises. Said rentals to be paid by deposit to credit of first party to Towanda State Bank at Towanda, Kansas."

Among other things, the amended petition alleged:

"May 26, A. D. 1908, said J. Shriver and Nannie E. Shriver, his wife, for a valuable consideration made, executed, acknowledged and delivered to one S. R. Walker, their certain oil and gas lease, in writing, whereby they granted unto said S. R. Walker and to his assigns the exclusive right for ten years from said May 26, A. D. 1908, to enter upon, operate for, produce upon and remove, oil and gas from said real estate. . . .

"August 6, A. D. 1914, while said above-mentioned oil and gas lease was in full force and effect and owned by said the Mid-Continent Development Company, said J. Shriver and Nannie E. Shriver, his wife, executed, and on the 7th day of August, 1914, delivered to one W. M. McKnab and his assigns, a written instrument purporting to be an oil and gas lease covering said real estate. . . .

"That prior to the time said J. Shriver executed said lease marked 'Exhibit E,' he informed said W. M. McKnab that he, the said J. Shriver, had made the oil and gas lease to said S. R. Walker as hereinafter alleged, and would not give said W. M. McKnab an oil and gas lease on the land hereinbefore described until the said S. R. Walker lease mentioned in paragraph numbered '4' of this petition was released of record; that at the time of the execution of said lease to W. M. McKnab, said W. M. McKnab informed said J. Shriver that the said S. R. Walker lease was released of record, although the said W. M. McKnab then and there well knew that the said S. R. Walker did not own said lease mentioned in paragraph '4' of this petition, but had assigned the same to the Mid-Continent Development Company, a corporation, as in this petition alleged, and that the same had not been released of record, or otherwise canceled, but was in full force and effect; that, on said 6th day of August, 1914, said J. Shriver was in feeble health, and his eyesight had so far failed that he was practically blind and unable to read or to sign his name, although theretofore he had been able so to do, and believed that W. M. McKnab had secured a valid release of said S. R. Walker lease, and, resting in that belief, executed said lease to said W. M. McKnab, marked 'Exhibit E,' which he would not have done if he had known that said S. R. Walker lease had not been legally released of record. . . ."

The original reply which was introduced in evidence over objection, but of which the court could have taken and of which this court does take judicial notice, read as follows:

"That he [the plaintiff] denies generally and specifically each and every allegation of new matter set forth in said answer and denies generally and specifically each and every allegation therein contained, not admitted and set forth in plaintiff's amended petition therein.

"Further replying to said answer said plaintiff states that the pretended release, the copy of which is set forth on page 4 of said answer in the 7th paragraph thereof, was not acknowledged as required by the laws of the state of Kansas and was not eligible to be filed and registered in the office of the

register of deeds of Butler county, Kansas, and was not such an instrument as would impart notice, and that at the time it was made the said S. R. Walker was not the owner of the oil and gas lease therein mentioned, he having prior to that time sold and assigned the same to the Mid-Continent Development Company, and said pretended instrument was wholly null and void."

The amended reply was in part as follows:

"That he denies that the said defendant became and is the owner of the so-called 'McKnab lease' as alleged in subdivision '(d)' of paragraph '3' of said amended answer. . . .

"That he denies each and every allegation and averment contained in the paragraph marked '8' of said defendant's amended answer, and specifically denies that if any instrument in form or substance of the alleged copy of an instrument alleged by said defendant in paragraph marked '8' of its said amended answer to have been signed by S. R. Walker, as set forth on page '6' of said amended answer was executed by S. R. Walker (which such execution this plaintiff denies) the same did not constitute a release of the S. R. Walker lease mentioned in plaintiff's amended petition, a copy of which is attached thereto, and if such an instrument was executed by S. R. Walker, the same was not duly acknowledged as alleged by defendant in its said amended answer, and was not acknowledged as required by the statutes of the state of Kansas to entitle the same to be recorded in the office of the register of deeds of Butler county, Kansas, and if the same was so written upon the records of the register of deeds of Butler county, Kansas, in book Misc. K, at page 477, or elsewhere on or of said records, the same was so written thereon without authority of law and in violation of the laws of the state of Kansas and the same did not and would not and does not impart or constitute any notice to anyone of the contents thereof, and this plaintiff denies that said alleged and purported instrument so alleged to have been signed by S. R. Walker was ever delivered to said Joshua Shriver, and plaintiff denies that said Joshua Shriver caused said instrument to be filed for record in the office of the register of deeds of Butler county, Kansas, on the 13th day of August, 1914, or at any other time, and denies that the same was duly filed and duly recorded at page 477 of volume K Misc. of the records of said office of the register of deeds, and denies that on August 4, 1914, or at any time thereafter, the said S. R. Walker was the owner of said Walker lease, and said plaintiff further denies each and every other allegation and averment contained in said paragraph marked '8' of said defendant's amended answer."

According to the findings of the court hereinbefore set out, the following allegations of the petition were not true:

"That at the time of the execution of said lease to W. M. McKnab . . . McKnab then and there well knew that the said S. R. Walker did not own said lease mentioned in paragraph '4' of this petition, but had assigned the same to the Mid-Continent Development Company, a corporation, as in this petition alleged . . .

"That on and prior to said 6th and 7th days of August, 1914, said W. M.

McKnab . . . had actual knowledge and notice that said S. R. Walker had assigned the same to said the Mid-Continent Development Company . . .

"That said W. M. McKnab, in pursuance of said direction and authority, made inquiries as to said lease mentioned in paragraph '4' of this petition, and as to the ownership thereof, and before taking said lease mentioned in paragraph '8' of this petition ascertained that the lease mentioned in paragraph '4' of this petition had been assigned by said S. R. Walker to said the Mid-Continent Development Company. . . ."

On January 15, 1912, P. P. Trueheart, president of the Mid-Continent Development Company, in a communication to the stockholders of that company, in part, said:

"As practically no business has been transacted by your board of directors since the present secretary was conducted into office, and as it has little, if anything to report, I feel that it is incumbent upon me to report to you a few happenings since the special stockholders' meeting in August . . .

"The enemies of the Mid-Continent Development Company maliciously state that $40,000 or more of the company's money has been wasted. In reply to that statement, I will say that the original idea of the organizers of the company was to secure an immense acreage of leases in Chase and Morris counties, Kansas, develop them, and sell to a large corporation. To carry out that idea, while Mr. P. G. Walker, Jr., was president and Mr. J. R. Cunningham was secretary, about 100,000 acres of leases were secured in Morris, Chase and Butler counties, Kansas, upon which five wells were drilled, only one being a gasser. Then after a thorough discussion, the project was declared a failure, after an expenditure of about $7,390, and the field abandoned. The Mall-Millen investment [in Oklahoma] was made at an expenditure of $13,542 while Mr. P. G. Walker, Jr., was president, and Mr. R. P. McGeehan was secretary, and while this investment has not been as remunerative as we had hoped, still I do not consider it a failure as we are selling nearly $400 worth of oil a month. However, for argument's sake, we will call it a failure, and added to the Morris and Chase counties failure, gives us a total of $20,932 instead of $40,000. . . .

"At the time the receiver was appointed, we were selling about $100 worth of gas a day [from wells in Wyandotte county]. Any stockholder with ordinary intelligence ought to know that under such favorable conditions there were no grounds for the appointment of a receiver, and it was done to promote the selfish interest of those who conspired to bring it about. . . ."

P. P. Trueheart testified in part as follows:

"Q. Did you ever know of S. R. Walker having executed any so-called releases of oil and gas leases covering any lands in Butler county, Kansas? A. I only knew of one up 'til yesterday.

"Q. What one was that? A. The Joshua Shriver lease.

"Q. When did you ascertain that there had been any attempted release of the oil and gas lease covering that land? A. I can't give you the date.

"Q. Who was it told you about it first? A. My impression is that I got a letter from Mr. Walker so stating.

"Q. Do you remember when you got that letter? A. No, sir; I do not.

"Q. Have you that letter? A. No. I looked for it the other day and I couldn't find it. One thing I want to correct: I knew of two leases that Mr. Walker had released.

"Q. Before Walker wrote you that letter didn't you ascertain that Walker— that there was a so-called release of the oil and gas lease on the Shriver land on file in Butler county, Kansas, from me? . . . A. Yes, I am sure I did. . . .

"Q. After I informed you of the .fact that I had discovered the so-called Walker release on file here did you write a letter to Walker concerning that matter? A. I did.

"Q. And did he reply to that letter? A. Yes, sir.

"Q. And is that the letter that you say you got. from Walker concerning this lease, or this release? A. Well, that's one letter I got from him. Whether it's that specific letter or not I couldn't say."

The register of deeds of Butler county, Edna Lucas Smith, testified that after the release had been recorded she delivered it to W. F. McGinnis. W. F. McGinnis testified that he probably received the release from the register of deeds, that he was then working for his father in an office in Wichita. Part of his testimony was as follows:

"Q. Do you know what was done with that release after you got it, if you did get it? A. No, I don't know. My father and Mr. McKnab were good friends in those times and doing a good deal of business, and I ran errands out of the office there for anyone that came in the office and I might have given it to my father and I might have given it to Mr. McKnab. I don't know who I gave it to. . . .

"Q. Have you made a search of your office and of your father's office for the purpose of finding that original release? A. Yes, sir.

"Q. You may state whether or not you have looked everywhere that such documents are kept in your office and in your father's office. A. I have.

"Q. Have you been able to find it? A. No, sir.

"Q. Do you have any knowledge now of where that release is or whether it is in actual existence? A. I have no idea.

"Q. If it remained in your office at that time you may state whether or not, in your judgment, it has been destroyed there with other waste paper. . . . A. Well, I should say that it had been destroyed, because most of the legal documents and everything else we had in there were destroyed by a janitor about six or seven years ago. They were all—I was cleaning up the office and they were all put in one big pasteboard box and the janitor took these along with the waste paper and burned everything up, and we lost everything in the office at that time."

1. The plaintiff complains of the introduction in evidence of the certified copy of the record of the release of the Walker lease as shown in the office of the register of deeds, and says:

"If section 67-237 authorizes the introduction in evidence of exhibit '2' [the release of the Walker lease], then the plaintiff has no right or title to the Walker lease."

Was it error for the court to receive in evidence the certified copy of the record of that release. Attention is directed to the allegations of the petition, to the findings of the court, and to the evidence of P. P. Trueheart concerning the letter he received from S. R. Walker, telling Trueheart about the release of the Walker lease. The pleadings and the evidence disclosed that the plaintiff had actual notice and knowledge of the release.

Section 67-237 of the Revised Statutes reads:

"When any instrument of writing shall have been on record in the office of the register of deeds in the proper county for the period of ten years, and there is a defect in such instrument because it has not been signed by the proper officer of any corporation, or because the corporate seal of the corporation has not been impressed on such instrument, or because the record does not show such seal, or because such instrument is not acknowledged, or because of any defect in the execution, acknowledgment, recording or certificate of recording the same, such instrument shall, from and after the expiration of ten years from the filing thereof for record be valid as though such instrument had, in the first instance, been in all respects duly executed, acknowledged, and certified, and such instrument shall, after the expiration of ten years from the filing of the same for record, impart to subsequent purchasers, encumbrancers and all other persons whomsoever, notice of such instrument of writing so far as and to the same extent that the same may then be recorded, copied or noted in such books of record, notwithstanding such defect. Such instrument or the record thereof, or a duly authenticated copy thereof, shall be competent evidence without requiring the original to be produced or accounted for to the same extent that written instruments, duly executed and acknowledged, or the record thereof, are competent: *Provided,* That nothing herein contained shall be construed to affect any rights acquired by grantees, assignees or encumbrancers subsequent to the filing of such instrument for record and prior to the expiration of ten years from the filing of such instrument for record."

What is the effect of the statute? It provides that instruments which have been recorded in the office of the register of deeds for a period of ten years may be received in evidence although they have not been acknowledged or may not have been properly acknowledged. It also provides that, if admitted in evidence, they shall not affect any rights acquired by grantees, assignees, or encumbrancers prior to the expiration of ten years from the time of filing such instrument for record. When ten years have expired, the record of the defective instrument may be received in evidence, but when received in evi-

dence it shall not affect those whose rights have been acquired prior to the expiration of the ten years. The language of the statute is equivalent to saying that the defective instrument may be received in evidence after the expiration of ten years but it has effect from and after that time to the same extent as if it had been properly executed, acknowledged, and recorded on the day of the expiration of ten years after it was recorded so far as rights acquired before the ten years had expired.

The existence of the release and that it was signed by S. R. Walker was recognized by the plaintiff in his pleadings. The objection was to the introduction of the certified copy of the record of that release as it was found in the office of the register of deeds in Butler county. It had been recorded in that office for more than ten years at the time of the trial. The release was recorded on August 13, 1914. The trial occurred on February 7, 1928. The statute (R. S. 67-237) provided for the introduction in evidence of the certified copy of the release. Evidence was introduced which tended to prove that the original document had been destroyed. The record in the office of the register of deeds was the best available secondary evidence of the contents of the release. It was not error to receive in evidence the certified copy of the record of the release.

2. The plaintiff is seeking to cancel the McKnab lease and to recover under the Walker lease for oil taken from the land. To cancel the McKnab lease or to recover for oil taken from the land, the plaintiff must allege and prove facts to show that the McKnab lease should be canceled. The McKnab lease was pleaded by the plaintiff and the existence of the release of the Walker lease signed by S. R. Walker was recognized by the plaintiff in his petition. He attempted to regard that release as a nullity because it was not properly acknowledged and for that reason was not entitled to be recorded. It was not a nullity; even if it had never been recorded, it was binding on the parties to it the same as any other written contract. An unacknowledged deed will convey land. (*Gray v. Ulrich,* 8 Kan. 112; *Mo. Pac. Rly. Co. v. Houseman,* 41 Kan. 300, 21 Pac. 284; *Mathewson, Administrator, v. Richards,* 114 Kan. 500, 503, 220 Pac. 185.) As to all who were privy to the McKnab lease, it was not necessary for the release of the Walker lease to have been recorded. The plaintiff in his petition sought to avoid the effect of the Walker release and of the McKnab lease by pleading that when

they were executed Walker did not own the Shriver lease and that McKnab had notice and knowledge that the Shriver lease was owned and held by the Mid-Continent Development Company. After pleading the McKnab lease and recognizing the Walker release, it was necessary for the plaintiff to plead facts to avoid them. That he did by pleading that McKnab had notice and knowledge of the rights of the Mid-Continent Development Company, but he failed to prove that fact. When the plaintiff failed to prove notice or knowledge of the rights of the Mid-Continent Development Company on the part of McKnab, he should have proved other facts to defeat the McKnab lease. That he could have done by proving that the Walker lease had not been released. That he did not attempt to do. He then relied on the record of the defectively acknowledged Walker release. His case then depended on there being no release of the Shriver lease by Walker. If the plaintiff had not sought to cancel the McKnab lease, and had simply pleaded the Walker lease, alleged trespass by the defendant, and asked damages without pleading the McKnab lease and without recognizing that there had been an attempt to release the Walker lease, and the defendant had then set up the McKnab lease and the release by Walker, it would have been incumbent on the defendant to have established the execution of the release. That was not the action prosecuted by the plaintiff and was not the case presented by the pleadings. The action was to cancel the McKnab lease. The petition recognized the release and attempted to avoid it. The plaintiff failed to show that the McKnab lease should be canceled and failed to prove the facts by which he sought to avoid the release.

3. Does estoppel bar the plaintiff from recovery in this action? Briefly stated, the findings of the court show that S. R. Walker obtained the lease from the Shrivers on May 26, 1908; that it was filed for record March 4, 1909; that it was assigned to the Mid-Continent Development Company February 8, 1910, but the assignment was not recorded until July 9, 1917; that neither S. R. Walker nor any of his successors paid the rental provided for in the Shriver lease; that neither S. R. Walker nor any of his successors made any effort to drill any oil or gas well in Butler county; that the release by Walker of the lease to him was signed by Walker on August 4, 1914; that the lease to McKnab was dated August 6, 1914; that the defendant entered upon the land to drill June 6, 1917, and began drilling June 22, 1917; that P. P. Trueheart, presi-

dent of the Mid-Continent Development Company, one of the successors in interest of S. R. Walker, notified the stockholders of his company that the project of drilling on the large acreage of leases in Morris, Chase and Butler counties was abandoned; that S. R. Walker had executed releases for a large number of the leases that had been obtained by him for the Mid-Continent Development Company; that P. P. Trueheart knew that S. R. Walker had released the Shriver lease; that neither the plaintiff nor any of his predecessors in interest paid any attention to that lease until the defendant under the McKnab lease was preparing to drill for oil on the premises covered by the lease. The plaintiff and his predecessors, for more than seven years, permitted the lease under which he claims to stand in the name of S. R. Walker, thereby permitting the records to show that he had authority to execute a release. The lease was probably subject to cancellation. The Mid-Continent Company after the assignment to it of the Walker lease, by recording the assignment to it, could have prevented any question concerning the right or power of S. R. Walker to release it. That the Mid-Continent Development Company did not do. Those facts showed an abandonment of all rights under the Walker lease and estop the plaintiff from maintaining this action.

When McKnab procured the release from Walker he did not have any notice or knowledge of the claims of the plaintiff or of any of his predecessors. The plaintiff and his predecessors had done nothing to show that they were interested in the property. Their conduct tended to show that they had abandoned the lease. They did not make any effort to develop the lease. They did not invest any substantial amount in it. The defendant did. It has expended large sums of money and produced great quantities of oil which the plaintiff is now claiming to have owned. The evidence showed that his claim was not equitable, and that it was stale and unjust.

The judgment is affirmed.