No. 37,108

EDNA SIMPSON Scott et al., *Appellants*, v. ANNA L. KIRKHAM, *Appellee.*

(193 P. 2d 185)

Opinion filed May 8, 1948.

*W. Glenn Hamilton, Floyd A. Sloan* and *Eldon Sloan*, all of Topeka, were on the briefs for the appellants.

*Clayton E. Kline, M. F. Cosgrove, Balfour Jeffrey* and *Robert E. Russell*, all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover the balance of money claimed to be due on a contract for the sale of real estate. Judgment was for the defendant and plaintiffs appeal.

Issues were joined by a petition and answer. The petition, in substance, alleged: Plaintiffs agreed to sell and defendant agreed to purchase certain described real estate in the city of Topeka; the total consideration specified in the written contract attached to the petition was $9,250; of that amount $9,100 was to be paid in cash

ánd the balance of $150 was to be paid on delivery of an abstract of title to the defendant showing merchantable title in plaintiffs; plaintiffs complied with the contract but defendant refused to pay the balance of $150.

The answer denied plaintiffs had fully performed the contract and alleged the abstract furnished disclosed the title was not marketable by reason of the following defects:

"1. On February 20, 1871, William E. Webb and Frances W. Welles received title by warranty deed, which deed was filed for record on the 28th day of February, 1871, and recorded in Book 27, page 365. On the 28th day of July, 1871, William J. Welles and Frances W. Welles conveyed by warranty deed to William E. Webb, which deed was filed July 29, 1871, and recorded in Book 28, page 398. Neither the deed nor any curative matter appearing in the abstract discloses the marital status of the grantors in the last described deed.

"2. John F. McCord acquired title by virtue of sheriff's deed, dated November 7, 1874, which deed was filed February 1, 1875, and recorded in Book 42, page 144. J. F. McCord acquired title by tax deed, dated November 10, 1879, filed November 26, 1879, and recorded in Book 61, page 168. The abstract discloses that probate proceedings were had in the Probate Court of Shawnee County, Kansas, in the matter of the Estate of John F. McCord, case No. 677, in which case the journal entry of final settlement and discharge, recorded in Journal 25, page 120, sets forth the names of the heirs at law of John F. McCord, deceased. In case No. 5757 in the District Court of Shawnee County, Kansas, there is shown in the abstract partition proceedings in which the petition recites that the plaintiff and defendants are all heirs at law of John McCord, deceased. In the journal entry in case No. 5757, the court finds that John F. McCord died seized in fee simple of certain real estate, which includes that which is the subject matter of this action. There is nothing in the abstract which discloses that John F. McCord, grantee in the above described sheriff's deed, J. F. McCord, grantee in the above described tax deed, and John McCord, in the partition case No. 5757, is one and the same person."

The action was tried by the court. It made findings of fact and conclusions of law as follows:

"FINDINGS OF FACT

"No. 1. The plaintiffs and defendant entered into the contract attached to plaintiffs' petition. The plaintiffs have fully complied with said agreement in all respects and have furnished to the defendant an abstract of title showing merchantable title in the first parties, except as hereinafter found.

"No. 2. [This finding is in substance the same as the first defect alleged in the petition except for one name which is spelled 'Wells' in this finding of fact and 'Welles' in the petition. The finding is not challenged and we shall assume the name is correct in the court's finding of fact.]

"No. 3. The abstract further shows the following: John F. McCord ac-

quired title to the real estate involved by virtue of sheriff's deed, dated Nov. 7, 1874, which deed was filed Feb. 1, 1875, and recorded in Book 42, page 144 in the records of the office of Register of Deeds, Shawnee County, Kansas. J. F. McCord acquired title to said real estate by tax deed, dated Nov. 10, 1879, filed Nov. 27, 1879, and recorded in Book 61, page 168 of said records. Partition proceedings are shown commenced on Feb. 10, 1883, in the District Court of Shawnee County, Kansas, in Case No. 5757, in which the petition alleges that the plaintiff and defendants are all heirs at law of John McCord, deceased, who died owning the real estate involved. Proper service, or entry of appearance, is shown on all of the defendants, and a decree of partition entered on May 18, 1883, in which the court found that John F. McCord died owning the real estate involved in this action, in fee simple, and that the plaintiff and the defendants were the only heirs at law of said John F. McCord, and said real estate ordered partitioned, or sold in the event partition could not be had. Pursuant to said decree, the real estate was duly and regularly sold to one Thomas Jensen, through whom the plaintiffs claim title. There is nothing in the abstract which discloses that John F. McCord named in the above described sheriff's deed and named in the journal entry of judgment in the above described partition proceedings, and J. F. McCord, grantee, in the above described tax deed, and John McCord named in the above described partition proceedings, is one and the same person.

"CONCLUSIONS OF LAW

"No. 1. The abstract of title failed to show marketable title in the plaintiff because of the facts set out in finding No. 2 above.

"No. 2. The abstract of title failed to show marketable title in the plaintiffs because of the facts set out in finding No. 3 above.

"No. 3. The plaintiffs, for the reasons hereinabove set out, have failed to furnish an abstract showing a marketable title in themselves, and therefore, are not entitled to recover the balance under the contract attached to their petition."

Plaintiffs' motion for a new trial which alleged the rulings of the court were contrary to law was overruled. Plaintiffs appeal from that ruling and from the findings and judgment of the court.

The first objection to the title is that the abstract fails to disclose the marital status of the grantors in the warranty deed of July 28, 1871.

The parties concede no Kansas case in point, based solely on the disclosures of an abstract of title, has been found. Neither has our research disclosed any. The reason would seem quite obvious. In the absence of a showing of any requirement by a purchaser to have irregularities in a title cured or in the absence of a showing of inability to cure mere irregularities parties do not ordinarily resort to litigation to obtain an adjudication of title based on an abstract alone. Assuming some irregularities existed the record

before us discloses no requirements made by the purchaser or a refusal or inability of the vendor to comply.

It is quite understandable that a purchaser might desire a perfect title and that he would therefore withhold enough of the consideration to defray the expenses of a quiet title action to cure even slight irregularities. This contract, however, did not require a perfect title from the vendors. It called only for a merchantable title. It is a bit difficult to believe a purchaser would pay $9,100 on a $9,250 contract if he actually entertained a fair and reasonable doubt relative to the marketability of the title. But we shall proceed.

Appellee cites only one case in support of the first alleged defect pertaining to the marital status of vendors in the deed of 1871. That case is *Linscott v. Moseman*, 84 Kan. 541, 114 Pac. 1088. No issue whatever was there involved concerning the necessity for an abstract showing the marital status of grantors. We may, however, remark that in the quotation contained in the Linscott opinion (p. 547) from Warvelle on Abstracts the use of proper affidavits pertaining to the marital relationship is recognized by common consent of the profession. It is also well to observe that the contract in the Linscott case required each party to furnish a *perfect* title to the properties to be exchanged and not merely a merchantable title as in the instant case.

Appellee cites no statute which requires an abstract to disclose the existence or nonexistence of a marital relation between grantors. It is important to observe that the facts before us do not show there was anything in the abstract to indicate either of the grantors in the deed of July 28, 1871, had ever been married. In the absence of such a showing there is no presumption either of them was married when they executed the deed to William E. Webb. Under these circumstances it has been held the title is not unmarketable by reason of there being no recitals in the conveyance or other showing of record on the subject of the marital relation. (Patton on Titles, §§ 213, 339; *Ross v. Carroll*, 156 Minn. 132, 194 N. W. 315. See, also, *Greenberg v. Schiffman*, 195 N. Y. S. 65.)

Under the facts before us there is no indication the title acquired by the grantee, William E. Webb, through the deed of July 28, 1871, has ever been questioned. In *Ross v. Carroll*, supra, it was held:

"In an action for specific performance the fact that a deed, which has remained unquestioned for more than 40 years, fails to show whether the

grantor was married or single does not render the title unmarketable, as there is no presumption that he was married." (Syl. ¶ 1.)

Prior to the execution of the deed in question William E. Webb and Frances W. Wells held the record title. William J. Wells and Frances W. Wells thereafter conveyed the property to William E. Webb. If William J. Wells was the husband of Frances W. Wells then Webb, of course, obtained the inchoate interest of William J. Wells. If, on the other hand, William J. Wells was not her husband his signature did not affect the title. Moreover, this deed to Webb was executed and recorded approximately seventy-six years before the instant contract was executed. Can it justly be said the instant purchaser entertained a fair and reasonable doubt that the failure of the abstract to disclose the marital status of the grantors rendered the title unmarketable?

Certain legal principles to be noted presently pertain also to the second complaint. Before considering such principles we shall turn to the facts concerning the second complaint.

The second objection was that there is nothing in the abstract which discloses that John F. McCord named in the sheriff's deed and in the judgment of partition and J. F. McCord, grantee in the tax deed, and John McCord, named in the petition for partition, are one and the same person.

The sheriff's deed to John F. McCord and the tax deed to J. F. McCord were respectively filed for record approximately seventy-two and sixty-eight years prior to the execution of the instant contract. While the petition in the partition suit filed in 1883 alleged John McCord was the owner of the land at the time of his death the decree determined John F. McCord was the owner of the property in fee simple at the time of his death. John F. McCord had acquired the title by sheriff's deed in 1874. In the partition action the plaintiffs and defendants constituted all the heirs at law of John F. McCord. Pursuant to the 1883 decree of partition the land was sold to Thomas Jensen. He is the person through whom the plaintiffs, the present vendors, claim title. Thomas Jensen, therefore, acquired title by virtue of a judicial sale approximately sixty-four years prior to the execution of the instant contract. In the record presented to us there is no indication Thomas Jensen's title or his right to possession was ever challenged by J. F. McCord, who acquired title by tax deed in 1879, or by any other person. Nor does defendant, the present purchaser, attempt to suggest any

ground upon which J. F. McCord could now disturb the title, assuming he was not one and the same person as John F. McCord.

Many years ago it became an almost universal custom for persons to use the initial letters only of the christian name. (*Ferguson v. Smith & Dunham,* 10 Kan. 396, 402.) On the subject of *idem sonans* see *Sparks v. Sparks,* 51 Kan. 195, 32 Pac. 892; *Dittman v. Cornelius* (Tex. Com. App.), 234 S. W. 880, and cases therein cited. In the Dittman case it was held:

"Similarity of names is sufficient to establish identity of persons when there is no evidence to the contrary, and no suspicion has been cast upon the transaction." (Syl. ¶ 2.)

In the instant case approximately sixty-eight years have transpired since the issuance of the tax deed to J. F. McCord without the slightest suspicion, according to the record before us, that he was not one and the same person as John F. McCord. In view of all the circumstances related we think this minor discrepancy in the use of the initial "J." instead of the christian name "John" does not raise a substantial or reasonable doubt relative to the identity of the persons or the marketability of the title.

Every examiner of titles knows an abstract seldom presents all the facts essential to a *perfect* title. Of course certain facts, for example the question of possession, are much better determinable in litigation as reflected in *McCullough v. McCullough,* 109 Kan. 497, 200 Pac. 298, and cases therein cited. Ownership of property, however, implies the right to possession. (42 Am. Jur., Property, § 40.) Prima facie, the holder of the legal title to a presently enjoyable estate in lands has the right to possession of the premises. (Powell on Actions for Land, rev. ed., § 153.) In the absence of a right of entry shown in another the law construes the holder of the legal title as having the right of entry. (Powell on Actions for Land, rev. ed., § 154.) Under the facts presented there is not the slightest inference possession, or the right to possession, by the holder of the legal title was ever questioned.

Where a contract requires a marketable title the abstract must disclose it. (*Hamilton v. Binger,* 162 Kan. 415, 176 P. 2d 553.) Precisely what matters of law or fact are sufficient to make a title so doubtful as to make it unmarketable cannot be indicated by positive rules that are applicable to every case. No attempt is made in the instant opinion to do so. We are now concerned only with the particular facts of the case before us.

It must always be borne in mind that a purchaser has a right to contract relative to the kind of title he will accept. He may contract for a perfect title or merely for a marketable title. He cannot, however, contract for the latter and demand the former. Here the purchaser required only a marketable title.

The question is, did he get it? Objections to a title on the ground it is unmarketable must, of course, be made in good faith. They must be reasonable. They cannot be reasonable if the title offered is free from reasonable doubt. Every examiner of titles knows that in reality he passes on the reasonableness of his own doubts, if any exist. As an aid in determining the character of doubt required to render a title unmarketable certain well known principles have been established. These principles do not permit an examiner, or his client, to refuse a title merely because he may entertain some lingering suspicion that possibly at some future date a question may be raised whether the title is perfect when he contracted only for a marketable title. In *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126, where the subject of marketable and unmarketable titles was under discussion, this court said:

"The rule is a just and familiar one that a marketable title is one which is free from reasonable doubt; and under this rule a title is doubtful and therefore unmarketable if it exposes the party holding it to the hazard of litigation. (*McNutt v. Nellans,* 82 Kan. 424, 108 Pac. 834; *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998, 30 L. R. A., n. s., 343; *Howe v. Coates,* 97 Minn. 385, 4 L. R. A., n. s., 1170.)

"On the other hand, mere quibbles and peccadilloes which the ingenuity of counsel can raise against a title do not render it unmarketable. To what hazard of litigation did these titles expose their holder? None is suggested, and it is difficult to imagine any. In Maupin on Marketable Title to Real Estate (p. 708), frequently quoted by this court (as in *Spaeth v. Kouns,* 95 Kan. 320, 326, 148 Pac. 651), it is said:

" 'The defect of title of which the purchaser complains must be of a substantial character; one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality, or value the property contracted for, constitute no ground upon which he may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient.' " (p. 100.)

These established principles were followed in *Burton v. Mellor,* 159 Kan. 262, 265, 154 P. 2d 108, in which other cases on the subject were reviewed. Mathematical certainty of a perfect title is not guaranteed by a contract calling for a marketable title. Absolute security in the purchase of real estate is not required by such a con-

tract. Merely vague suspicion relative to irregularities as remote in point of time as those involved in the instant case cannot well be said to form the basis of substantial or reasonable doubt of marketability.

In *Liberty Oil Co. v. Condon Nat. Bank*, 291 F. 293, the court quoted at length from Maupin on Marketable Titles. A part of the quotation reads:

"The purchaser cannot demand a title absolutely free from all suspicion or possible defect; nor that he be guaranteed against any trouble on account of the title. He can simply require a title such as prudent men, well advised as to the facts and their legal bearings, would be willing to accept. The doubts must be such as will affect the market value of the estate. They must not be made up for the occasion, based on captious, frivolous, and astute niceties; they must be such as would induce a prudent man to hesitate in accepting a title affected by them." (p. 298.)

There is nothing in the record presented here to indicate the market value of the property was affected by the complaints now lodged against the title by the purchaser. In fact the amount of the total consideration already paid by the purchaser for the title disclosed by this abstract rather clearly indicates he entertained no serious or substantial doubt concerning the marketability of the title.

The judgment is reversed with directions to enter judgment for plaintiffs.