No. 37,781

H. B. PEATLING, *Appellant*, v. WM. S. BAIRD, sometimes known as WILLIAM S. BAIRD, *Appellee*.

(213 P. 2d 1015)

Opinion filed January 28, 1950.

*Jerry E. Driscoll,* of Russell, argued the cause, and *Richard M. Driscoll,* of Russell, and *Ralph Knittle,* of Salina, were with him on the briefs for the appellant.

*LaRue Royce,* of Salina, argued the cause, and *E. S. Hampton, H. H. Dunham, Jr., John Q. Royce,* and *H. G. Engleman,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for specific performance of a contract for the purchase of real estate. The defendant's demurrer to plaintiff's amended petition was sustained and he appeals.

For present purposes it may be said that in his amended petition plaintiff alleged that on October 28, 1947, defendant was the owner of a certain eighty acres in Saline county and entered into a written agreement with plaintiff to sell the land to plaintiff for a stated consideration, payable whenever a merchantable title was delivered to plaintiff, defendant to have the abstract of title brought up to date and delivered to plaintiff "in order that same may be passed upon by his attorney," a copy of the contract being attached to the amended petition as an exhibit; that defendant caused the abstract of title to be brought to date and delivered to plaintiff, who placed it in the hands of an attorney who diligently examined it and the abstract of title was then delivered to defendant, with the attorney's written opinions and requirements, copies being attached to and made part of the amended petition. The first of these opinions dated December 8, 1947, stated that the attorney had examined the abstract of title and was of the opinion that on November 4, 1947, Wm. S. Baird was the owner of the involved real estate, free and clear of all liens and incumbrances except (1) A contract between Green and Garman relating to an oil and gas lease, an assignment of leases and a release thereof which the examiner deemed insufficient; (2) an oil and gas lease from Coffman to Brotton and assigned to The Brotton, Dalton Oil Company; and (3) an oil and gas lease from Baird to Westgate-Greenland Oil Co. These several items are more fully referred to later herein. The second opinion dated January 10, 1947, stated the attorney had again examined the abstract of title and was of the opinion that on December 22, 1947, the date of the abstractor's certificate, the abstract of title showed Wm. S. Baird to be the owner of the real estate free and clear of all liens and incumbrances except: (the same matters noted at 1 and 2 of the first opinion).

It was further alleged in the amended petition that the title to the real estate, as disclosed by the written opinions of plaintiff's attorney, which were reasonable, was found to be defective, nonmerchant-

able, unmarketable and doubtful, a condition unknown to plaintiff but known to the defendant at the time the contract of sale was executed. It was then alleged that the defects, clouds, flaws and incumbrances existing on and against the title were as follows, and thirteen alleged defects referring to specific entries in the abstract and including those mentioned in 1, 2 and 3, of the attorney's first opinion, are then set forth, and the abstract of title referred to was made a part of the petition by reference. (We here interpolate that the petition as originally filed listed as specific defects only the three matters mentioned in the attorney's first opinion, but did also allege the title was incumbered with additional flaws and defects. In response to a motion to make definite and certain the additional claimed flaws and defects were set forth. On motion of the defendant all of the objections not included in the attorney's opinion were stricken from the amended petition.) It was further alleged in the amended petition and at length that the objections and requirements made by plaintiff to the title were good and reasonable but that defendant made no effort to make corrections but on the contrary and without just cause refused to meet any of the requirements, and contended that the defects complained of did not in any manner constitute clouds on the title; that plaintiff advised defendant he desired to fully consummate the contract; that defendant failed to perform the conditions of the contract and deliver a merchantable title to the real estate; that plaintiff duly performed all agreements on his part and was willing, ready and able to perform and had tendered the balance of the purchase price on receiving a merchantable title from the defendant. Copies of letters passing between the parties are attached to and made part of the amended petition. Allegations as to subsequent rise in price of the land and as to plaintiff's damage need not be noted. The prayer was for specific performance, incidental relief and for damages.

Defendant's demurrer on the ground the amended petition failed to state facts which constituted a cause of action was sustained, and the plaintiff perfected his appeal to this court.

Appellant has prepared and filed a lengthy brief, directing our attention to some rules of law and practice concerning which there is no dispute, and to matters which in view of our conclusions on other questions need not be discussed, and in support has cited many of our decisions, as well as those of other jurisdictions, and textbook authority. Limits of time and space prevent reference to each of them.

Appellant first directs our attention to the settled rule that a demurrer admits facts properly and well pleaded and that every material fact and every inference therefrom must be liberally construed in favor of the pleader. That may be conceded and we examine the amended petition in the light thereof.

A mere reading of the petition and the contract of purchase made a part thereof shows that the abstract of title was to disclose a merchantable title in the vendor, and no more.

In many of our decisions may be found a discussion of what constitutes a marketable, or as is sometimes called a merchantable, title. In *Newell v. McMillan*, 139 Kan. 94, 100, 30 P. 2d 126, it was said:

"The rule is a just and familiar one that a marketable title is one which is free from reasonable doubt; and under this rule a title is doubtful and therefore unmarketable if it exposes the party holding it to the hazard of litigation. (*McNutt v. Nellans*, 82 Kan. 424, 108 Pac. 834; *Williams v. Bricker*, 83 Kan. 53, 109 Pac. 998, 30 L. R. A., n. s., 343; *Howe v. Coates*, 97 Minn. 385, 4 L. R. A., n. s., 1170.)

"On the other hand, mere quibbles and pecadilloes which the ingenuity of counsel can raise against a title do not render it unmarketable. To what hazard of litigation did these titles expose their holder? None is suggested, and it is difficult to imagine any. In Maupin on Marketable Title to Real Estate (p. 708), frequently quoted by this court (as in *Spaeth v. Kouns*, 95 Kan. 320, 326, 148 Pac. 651), it is said:

"'The defect of title of which the purchaser complains must be of a substantial character; one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality, or value the property contracted for, constitute no ground upon which he may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient.'"

The rule stated in the above case was quoted approvingly in *Burton v. Mellor*, 159 Kan. 262, 265, 154 P. 2d 108, and in *Scott v. Kirkham*, 165 Kan. 140, 146, 193 P. 2d 185, and in cases cited therein. Although the rule has been stated in varying language in other cases (see West's Kansas Digest, Vendor & Purchaser, § 130; Hatcher's Kansas Digest, Vendor and Purchaser, § 43) the definition above suffices here.

Before examining the petition and the abstract of title made part thereof to determine the legal sufficiency of objections made that it did not disclose marketable title in the appellee, we note two contentions made by the appellant. The first is as to the effect to be given to the opinion of the examining attorney, it be-

ing argued inferentially that the title having been examined by a competent attorney, appellant had a right to rely on his opinion. In support our attention is directed to *Read v. Loftus*, 82 Kan. 485, 108 Pac. 850, 31 L. R. A., n. s., 457, and *Canaday v. Miller*, 102 Kan. 577, 171 Pac. 651, and also to 55 Am. Jur. 642, where it is said there is authority that in determining marketability of the vendor's title, it is proper for the court to consider the fact that an opinion has been rendered in good faith by a competent attorney. The Kansas cases relied on both arose where the title to be delivered was one to the satisfaction of the vendee, a very different thing than one merely marketable, as those cases disclose. Although we think it proper for the court to take into consideration the fact a competent attorney has rendered an opinion the title is not marketable, that is not the end of the matter. Whether the title was in fact marketable presented a question of law for the trial court in the first instance, and for this court on appeal. The second contention made is presented by the question: When certain objections to the title are made, are others waived? As has been stated, when the abstract of title was originally examined, three claimed defects were noted. After the abstract of title had been recertified and at a subsequent examination only two defects were noted. On that basis and as shown by letters attached to and made part of the petition, the appellant demanded that the appellee institute an action to quiet the title. The appellee refused and thereafter the plaintiff's attorney advised appellee that there was an outstanding oil and gas lease on the real estate and a quiet title action was necessary to remove the defect, and unless appellee took action to correct the defect appellant would commence an action for specific performance and damages. The appellee immediately wrote the appellant at length stating the abstract showed marketable title and that appellant had failed to perform and that appellee would treat the contract as rescinded by appellant and of no further force. In support of his contention that by his attorney's statement of defects in the title the appellant had not waived his rights to raise other and further objection, our attention is directed to *Linscott v. Moseman*, 84 Kan. 541, 114 Pac. 1088, and *Eisenhour v. Cities Service Oil Co.*, 149 Kan. 853, 89 P. 2d 912. Without reviewing those cases, where it was held there was no waiver, we think they are so clearly distinguishable as not to be decisive here. In the case at bar the appellant placed his objection on a specific defect and demanded that the title be quieted. In equity and

good conscience he should not be permitted to contend the title was not marketable by reason of numerous other claimed defects, none of which was embodied either in his attorney's opinions on the title or in his demand that a quiet title suit be filed. As bearing on the question see *Paul Co. v. Shaw,* 86 Kan. 136, 139, 119 Pac. 546, and *Gage v. Leslie,* 123 Kan. 72, 75, 254 Pac. 362, and cases cited therein. In our opinion the trial court committed no error in striking from the amended petition, allegations concerning claimed defects not included in the opinions and letters of the appellant's examining attorney.

Insofar as the question of marketability of the title disclosed by the abstract of title is concerned, there are left for consideration the three claimed defects set forth in the examining attorney's first opinion, or the two of them as set forth in his second opinion, the general content of which has been referred to earlier herein and these will be discussed in the order there set forth.

The abstract of title discloses that on March 4, 1929, the real estate was owned by Arthur C. Coffman and that it was not then incumbered by any oil and gas lease of record. On that date there was filed for record and recorded an instrument of even date, entitled "Notice to Public" signed and acknowledged by George L. Green and D. O. Garman, purporting to give notice to the owners of the involved real estate and the owners of other real estate not here involved, that Green and Garman had entered into agreements with the owners whereby oil and gas leases in their favor had been deposited in the Farmers National Bank of Salina, upon condition that if the lessees should commence a well for oil and gas on certain lands the bank was authorized to deliver the leases, or if certain rentals were paid on or before July 1, 1929, the leases should be delivered, but if there was failure to perform the bank was directed to return the oil and gas lease to the lessor and thereupon the lease and the escrow agreement should become null and void and all rights, obligations and liabilities should cease, determine and be forever at an end as to all parties. On April 8, 1929, there was filed for record and recorded in Book Misc. 1, page 277, an assignment by Green to Garman of all of his interest in the leases in escrow. On May 5, 1930, there was filed for record on the margin of Book Misc. 1, page 277, a writing signed by Garman, dated April 24, 1930, directed to the register of deeds of Saline county, stating: "You are hereby requested to release this instrument from record. The rentals due July 1, 1929, according to escrow agreement were not paid neither has a

well been drilled on any part of this acreage." The record also discloses that the foregoing was written on the original assignment of acreage. Under date of May 3, 1946, Arthur C. Coffman made an affidavit, recorded June 4, 1946, setting out the making of oil and gas leases to Green and Garman and the deposit of the same in escrow in the Farmers National Bank of Salina and that to the best of his knowledge and belief the leases were never delivered and the conditions to be performed by the lessees were never performed; that the primary terms of the leases were not in excess of ten years, which has long expired and there has never been any development thereunder. It may be noted that Coffman conveyed the real estate in November of 1938. It was the opinion of the examining attorney that the release executed by Garman was ineffective and that the lease on the involved real estate should be obtained and identified as the only lease. In his opinions the examiner made no demand for a release but did demand that the title be quieted.

The gist of appellant's argument that the above "Notice to Public" constituted a cloud on the title and rendered it unmarketable is that the lease referred to is unaccounted for, or surrendered and released; that its terms are not known and a purchaser would possibly encounter the hazard of litigation; that Garman's release and Coffman's affidavit were never "acknowledged" and were not admissible to record, but if so, they were insufficient to remove the cloud. In support our attention is directed to *Linscott v. Moseman,* supra. Reference to that case shows the controversy arose in 1908. The abstract of title disclosed a recorded oil and gas lease dated in June, 1904, for a primary term of ten years. It provided for drilling a well or for delay rentals, and on default was to become null and void. It was held this unreleased oil and gas lease rendered the title unmarketable and that the defect could not be removed by an affidavit made by one whose connection with the title was not shown, setting forth the lease was void because of noncompliance with its terms. That case is not decisive here. There a recorded lease was involved—here there is an unrecorded lease made sometime prior to March 4, 1929, subject to delivery upon compliance with the terms of the escrow agreement. If delivered but unrecorded it would only be good as between the parties to it (G. S. 1935, 67-223). However, by reason of recorded conveyances Garman became the owner of whatever rights the lessees had. He executed a document directing a release and stating that the conditions of the escrow agreement for delivery of the lease had never been performed, and this document was

recorded on May 5, 1930. The objection to the release is that it was not "acknowledged." Under G. S. 1935, 67-237, it is provided that when any instrument of writing shall have been on record in the office of the register of deeds in the proper county for the period of ten years and there is a defect in the instrument because it is not acknowledged, such instrument shall, after the expiration of ten years from the filing of the same for record, impart notice of the same to subsequent purchasers. In *Brinkman v. Empire Gas & Fuel Co.,* 127 Kan. 551, 274 Pac. 277, this court considered an unacknowledged release in many respects quite like the one in controversy, and the effect of its having been of record for over ten years, holding that it was not a nullity, was admissible in evidence, and that if it had never been recorded it was good between the parties to it. We need not dwell on other reasons set forth by the appellee as to why the "Notice to Public" did not render the title unmarketable. In our opinion whatever cloud on the title the filing of that notice created was effectually removed by the assignment and release subsequently executed and recorded.

The second objection in the opinion of the examining attorney is predicated on the following: Under date of April 27, 1934, Arthur C. Coffman and his wife executed an oil and gas lease to C. M. Brotton which was recorded December 21, 1934. The lease was for a primary term of five years and as long thereafter as oil and gas were produced. Provisions as to drilling a well or paying delay rentals need not be noticed. Under date of January 30, 1935, Brotton assigned this lease to The Brotton, Dalton Oil Company, the assignment being duly recorded. No release of the oil and gas lease appears of record. Appellant's attorney demanded a release. In his brief appellant directs attention to the above instruments, and says this lease is an incumbrance and renders the title unmarketable, but aside from some citations that such a lease is an incumbrance he makes no argument separate and apart from his contentions with respect to other claimed defects. It may be conceded without elaboration that the lease was a conveyance of such an interest in the real property described that the recording of it imparted notice to all subsequent purchasers in accord with G. S. 1935, 67-222 (see *Derby Oil Co. v. Bell,* 134 Kan. 489, 7 P. 2d 39), and that when recorded, it constituted an incumbrance to the extent of its terms. At the time the instant lease was given Laws 1915, ch. 228, section 2 (now appearing as G. S. 1935, 55-205) was, and still

is, in effect. In substance it provided that when an oil and gas lease is given on lands in Kansas, the recording thereof in the office of the register of deeds in which the land is located shall impart notice to the public of the validity and continuance of the lease for the definite term therein expressed but no longer, provided if the lease contain the statement of any contingency upon the happening of which the term of the lease may be extended such as "and as much longer as oil and gas or either are produced in paying quantities" the owner of the lease may at any time before the expiration of the definite term, file with the register of deeds an affidavit setting forth among other things, the facts showing the contingency has happened, and when such affidavit is filed it imparts due notice to the public of the existence and continuing validity of the lease, until the same shall be forfeited, cancelled, set aside or surrendered according to law. The exact question presented under the factual situation now before us has not been the subject of any previous opinion of this court. In *Cement Co. v. Brick & Tile Co.*, 100 Kan. 547, 164 Pac. 1087, plaintiff as owner of land brought an action against the assignee of a lessee under an oil and gas lease to recover rents for nine years. A demurrer to plaintiff's evidence was sustained and it appealed. This court affirmed. The only evidence was plaintiff's deed, the oil and gas lease, and assignments of it. The lease was dated November 26, 1902, and was for three years, and if oil or gas be found to continue so long as either could be produced in paying quantities. The ruling on the demurrer was based upon the proposition that the lease had expired before plaintiff purchased the land, unless it had been extended by discovery of oil or gas, and that no such discovery had been shown. We need not comment upon recitals in plaintiff's deed, as extending the term of the lease, but do note the statement that it was incumbent upon the plaintiff to show affirmatively that oil or gas had been discovered rather than upon the defendant to show the negative. Referring to G. S. 1915, section 4992 (now appearing as G. S. 1935, 55-201) dealing with the duty of the lessee to have a forfeited lease released, this court said it related to leases which have "become forfeited" and that it was not intended to apply to a lease which had expired, but which might have been extended by certain conditions if they had arisen, seemed apparent from the succeeding section (now G. S. 1935, 55-205) "which provides that the record of an oil and gas lease shall impart notice of its continuance only for the definite period therein expressed, unless an

affidavit is filed with the register of deeds showing the happening of the contingency effecting an extension" and that failure to comply with the statute requiring a release, while subjecting the lessee to a penalty, would not extend the duration of the lease. While we shall not go so far as to say there might not be occasions where equitable principles would preclude such a result, the case at bar presents none, and we hold that the failure of the lessee to file an affidavit showing the happening of any contingency that would extend the express term of five years from the date of the lease, April 27, 1934, disclosed a situation where that lease had expired by its own terms on April 27, 1939, and thereafter it was of no force or effect, and constituted no incumbrance on the title of the owner of the real estate.

The third objection in the first opinion of the examining attorney was directed to an oil and gas lease by Baird to Westgate-Greenland Oil Company. After the abstract of title had thereafter been brought to date, it showed a release of that lease. In his second opinion, the examining attorney made no mention of the lease or release thereof. However in the amended petition reference is made to the release as being insufficient because it is alleged the corporate seal of the company did not appear on the release. A counter-abstract containing a copy of the entire abstract of title, and to which no objection as to its accuracy has been made, shows that the corporate seal was affixed. It is obvious no claim of unmarketability can be based on the above.

That part of the appellant's brief devoted to the claimed defects, allegations concerning which were stricken, needs no attention.

Appellant directs our attention to paragraph 3 of the syllabus in *Linscott v. Moseman*, supra, to the effect that equities in favor of a vendor must be very strong before a court will compel a vendee to accept and pay for an unmarketable title under a contract for a perfect title, and argues that he should not be compelled to accept the present title. A short answer is his contract was not for a perfect, but only a marketable title, he refused to accept the title tendered, and thereupon his vendor elected to treat the contract at an end. His present action is one to compel the vendor to furnish him with a different title than he contracted to receive, the vendor is not seeking to compel him to accept anything at all.

The amended petition and the exhibits attached to it disclose that appellant's claims as to the title being unmarketable are un-

founded; that the appellee was not at fault in treating the contract of purchase as rescinded by reason of appellant's refusal to accept the title; that appellant was not entitled to the relief sought by him, and that the trial court did not err in its ruling striking certain allegations from the amended petition, nor in its ruling sustaining appellee's demurrer to the amended petition.

The judgment of the trial court is affirmed.