THE T. B. TOWNSEND BRICK AND CONTRACTING
COMPANY v. JOHN W. ALLEN *et al.*

No. 11,720.*  (62 Pac. 1008.)

MORTGAGE AND LEASE — *Clay in Bank — Invalid on Brick not Manufactured.* The owners of a brick-yard leased it to another, and stipulated in the lease that they should retain and hold a mortgage lien on the clay in the bank and upon the brick manufactured therefrom as security for any unpaid rent.  The clay intended to be covered by the mortgage was in its natural state, and not severed or set apart in any manner.  Afterward the lessee manufactured brick and sold the same while a portion of the rent was unpaid, and an action for the value of the brick sold was brought against the purchaser.  *Held*, that the mortgage contract did not create a lien on the brick not manufactured or in existence when the mortgage was executed.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. McELROY, judges.  Opinion filed December 8, 1900. Reversed.

*Henry Elliston*, for plaintiff in error.

*Wollman, Solomon & Cooper*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.:  John W. Allen, James P. McGuire, John H. Barry, and T. J. Emlen, who owned six acres of land near Atchison upon which there were machinery and appliances for the manufacture of vitrified brick, leased the same to John Gaffney for a term of one year at a stipulated rental, payable monthly. The instrument also provided that the lessors should have and retain a lien on the clay and material taken from the premises and upon the brick manufactured there to secure the payment of accrued and unpaid

* For opinion by the court of appeals, see 9 Kan. App. 230, 59 Pac. 683.—REP.

rent.  Gaffney at once entered into possession of the premises and manufactured large quantities of vitrified paving brick.  On November 10, 1894, the T. B. Townsend Brick and Contracting Company purchased a large quantity of brick from Gaffney, including those in controversy, and immediately after the purchase took possession of the same.  The rent due to the lessors had been paid down to and including the 14th day of October, 1894, and when the controversy arose between the lessors and the purchasers of the brick there was due from Gaffney to the lessors for rent the sum of $250.  The lessors, claiming the brick so purchased and taken possession of by the T. B. Townsend Brick and Contracting Company by virtue of the conditions and lien stated and given in the lease, brought this action to recover the value of the brick, and the trial court sustained the lien claimed by the plaintiffs and rendered judgment in their favor. The judgment was affirmed by the court of appeals, and the validity of the mortgage lien is again presented for consideration.

It may be assumed that the lease created a lien on any brick that had been made and were in existence when the lease was executed and filed in the office of the register of deeds ; but can it be held to create a lien on brick made long afterward ?  None of the brick in controversy had been made when the lease was executed, and even the clay and shale from which brick were subsequently made were then in the bank and in a natural state.  The face of the bank had been properly stripped, but before the clay used to produce the bricks in controversy had been reached, clay sufficient to make a million of bricks had been taken from the bank.  The clay and shale in the bank have peculiar qualities necessary for the manufacture of

vitrified brick, qualities which ordinary clay does not contain, but no portion of the same which ultimately became an element in the brick in controversy was in any manner set apart by severance nor by the marking of the place from which it should be taken. There was no agreement nor was it in contemplation of the parties that any particular clay on the premises should be used, but the lessee, Gaffney, had the right to take clay and shale for the purpose of making brick from any portion of the six-acre tract leased to him. Certainly the brick in controversy were not in actual existence when the chattel mortgage was made, and the clay and shale which entered into the manufacture of the same could not be identified in any manner.

The general rule is that no one can mortgage property which does not exist or which does not belong to him. It is true parties may make contracts with reference to after-acquired property which will be upheld as between themselves, but such contracts are not to be treated as chattel mortgages. The contention here is that the clay and shale used in producing the brick in controversy were in existence; that these constituted the principal elements which entered into the making of the brick in controversy; and therefore they had a potential existence to which the mortgage lien might attach. It is specifically agreed that the material out of which a thousand brick were made was only worth from twenty to thirty cents, while that amount of brick when completed was worth eight dollars. . It is also agreed that the nature of the clay was so completely changed by the process of converting it into vitrified brick that it naturally would never return to its original condition. The attempt to give a chattel mortgage upon the clay in the bank was ineffectual, because there was no severance, no setting

apart by marking or otherwise, and being in its natural state it must be regarded as real estate, and we are of opinion that, under the authority of *Long v. Hines*, 40 Kan., 216, 16 Pac. 339, the brick had no such actual or potential existence when the mortgage was made as to subject them to the lien of the same. In that case, it was held that a chattel mortgage on a corn crop to be grown in the future, but which had not been planted at the time of the execution of the mortgage, was void as against subsequent purchasers or attaching creditors, although the mortgagor was in possession of the land when the mortgage was executed.

While it is held that a valid mortgage may be given on a growing crop, the crop itself has a potential existence and will in due course of time and nature develop and mature; but a crop cannot be said to have an actual or potential existence merely because a person may have soil upon which to grow a crop or seed for that purpose. While the soil and the seed are essential, a crop cannot come into existence except by a new intervening act, and except with the assistance of other elements and forces. ( *Cole v. Kerr*, 19 Neb. 553, 26 N. W. 598.) So here, while the clay is an essential element in the manufacture of brick, the process of manufacture completely changes its form and character. The brick were not in existence when the mortgage was executed, and besides, they would never again become clay or return to the original condition. Other elements and forces were employed in the manufacture, so that the identity of the clay was entirely lost, and the product, as we have seen, is worth about forty times more than the clay which entered into it.

It is argued that because clay was the principal material from which the brick were made, and was in

existence, that the rule of *Long v. Hines*, supra, cannot apply. The mortgagor had the soil and seed in the case mentioned, which were the principal elements for the production of the crop, but the product was held not to have a potential existence; and for like reasons it must be held that the product, made largely from clay, had no such existence when the mortgage was made as to make it subject to the lien thereof. It having been held that the instrument was insufficient to constitute a lien on the brick in controversy, it is unnecessary to consider the points made with reference to the filing of the same in the office of the register of deeds.

The judgments of the district court and of the court of appeals will be reversed, and the cause remanded with directions to enter judgment in favor of the T. B. Townsend Brick and Contracting Company.