**RIVERVIEW STATE BANK v. ERNEST.**

**ERNEST v. RIVERVIEW STATE BANK.**

Nos. 4401, 4402.

United States Court of Appeals
Tenth Circuit.

July 10, 1952.

Rehearing Denied Aug. 4, 1952.

T. M. Lillard, Topeka, Kan. (N. E. Snyder, Kansas City, Kan., and A. W. Hershberger, Wichita, Kan., on the brief), for appellant and cross-appellee.

Wesley E. Brown and Donald C. Martindell, Hutchinson, Kan. (Martindell, Carey, Brown & Brabets, Hutchinson, Kan., and Collins, Williams, Hughes & Martin, Wichita, Kan., on the brief), for appellee and cross-appellant.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

These appeals present for determination rival contentions in a proceeding in bankruptcy in Kansas. H. A. Hershfield & Company, whose corporate name was subsequently changed to National Petroleum Reserves Corporation, hereinafter referred to as the bankrupt, executed and delivered to Riverview State Bank of Kansas City, Kansas, hereinafter referred to as the bank, a promissory note in the sum of $250,000, with interest thereon at the rate of four per cent per annum, payable in monthly installments of $2,083.33, plus accrued interest. Concurrently with the execution and delivery of the note and for the purpose of securing its payment, the bankrupt executed and delivered to the bank a first mortgage covering its interest in and to certain oil and gas leaseholds in Barton, Reno, Rice, and Stafford Counties, Kansas. The mortgage provided among other things that the bankrupt would execute and cause to be delivered to the proper parties all division and transfer orders which were necessary to assign to the bank all interest of the bankrupt in and to the proportionate part of the oil and gas produced from each of the mortgaged properties which the bankrupt owned or was entitled to; and it further provided that out of the proceeds of the oil run payments so assigned, the bank should apply during each calendar month the minimum aggregate sum of $2,083.33 on the principal and any unpaid interest on the note, should also apply such further amounts as were needed to pay any other obligations of the bankrupt to the bank, and should release to the bankrupt any excess remaining if no default then existed under the instrument. The mortgage was with reasonable promptness duly recorded in the office of register of deeds and also filed as a chattel mortgage in each of the four counties in which the property was situated. Approximately three months after the execution and delivery of the note and mortgage, the bankrupt executed and delivered to the bank an instrument designated "Assignment of Additional Collateral Security." The instrument was in substance a supplemental mortgage and it covered the interest of the bankrupt in a leasehold in Ellis County, Kansas. It recited that the bankrupt was indebted to the bank in the sum of $250,000, made specific reference to the original note and mortgage, and provided that the rights and interests of the bankrupt in such leasehold should be held by the bank under the same terms and conditions, and to the same extent, as if the leasehold had been included in the property described in the original mortgage. Thereafter, the bankrupt executed and delivered to the bank a like supplemental mortgage covering the interest of the bankrupt in a leasehold in Russell County, Kansas. The two supplemental mortgages were seasonably recorded in the office of the register of deeds of the respective counties in which the property was situated, but they were not filed as chattel mortgages or entered on the chattel mortgage records in either of such counties. Division orders or transfer orders were executed by the bankrupt in favor of the bank and filed with the oil pipe line companies at the time the mortgage was given on leases then in production, and thereafter like orders were promptly executed and filed as each lease became a producer. The division and transfer orders covered production of all producing wells on leases included in the original mortgage and also on the leases in Ellis and Russell Counties. For about six years after the execution of the note, original mortgage, and first division and transfer orders, the bank received and applied on the note of the bankrupt the oil run payments. Payments were

then discontinued and since that time the funds have been impounded by the pipe line companies.

A petition in involuntary bankruptcy was filed against the bankrupt. On the same day, the bankrupt filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. No arrangement with creditors was effectuated; an order of adjudication was entered; and a trustee was duly selected and qualified. The referee determined that the mortgage recorded in the mortgage records and also filed and entered as a chattel mortgage in Barton, Reno, Rice, and Stafford Counties was valid as to the property, including the oil runs or the proceeds therefrom in those counties; and the referee further determined that the supplemental mortgages filed in Ellis and Russell Counties only as real estate mortgages and not filed as chattel mortgages were void as against the trustee in respect to all personal property described in such mortgages, including oil produced in such counties, from the date of the intervention of bankruptcy, and the bank was required to account accordingly to the trustee. On review, the court sustained in all respects the order of the referee. The bank appealed from the order of the court insofar as it sustained the determination of the referee that as against the trustee the bank had no lien upon the leaseholds in Ellis and Russell Counties and no claim to the oil runs or the proceeds therefrom in those counties; and the trustee appealed from the order of the court insofar as it upheld the determination of the referee that as against the trustee the mortgage created a valid lien upon the leaseholds, as well as the oil runs therefrom and the proceeds thereof, in Barton, Reno, Rice, and Stafford Counties.

On its appeal, the bank challenges the order of the court insofar as it was adverse to the bank, upon the ground that the recording of the supplemental mortgages in the office of the register of deeds in Ellis and Russell Counties fastened a valid lien upon the mineral leaseholds and the proceeds therefrom in those counties which should have been sustained. The solution of the question must have its source pri-

marily in the proper interpretation of certain statutory provisions of Kansas and in certain decisions of the supreme court of the state. Section 55–203, General Statutes of Kansas 1949, provides that any oil and gas or mining lease that has been or may be recorded in the office of the register of deeds of the county may be discharged and cancelled of record by entry on the margin of the record thereof in the manner therein specified. Section 55–205 provides that when an oil, gas, or mineral lease is given on land within the state, the recording thereof in the office of the register of deeds of the county in which the land is situated shall impart notice to the public of the validity and continuance of the lease for the definite term therein expressed, but no longer; that if the lease contains the statement of any contingency upon the happening of which the terms may be extended, the owner of the lease may at any time before the expiration of the definite term file with the register of deeds an affidavit setting forth the facts showing that the required contingency has happened; that the affidavit shall be recorded in full; and that such record together with that of the lease shall be due notice to the public of the existence and continuing validity of the lease, until it shall be forfeited, cancelled, set aside, or surrendered according to law. Section 55–210 provides that all liens for labor and materials furnished to owners of leaseholds for oil and gas purposes shall be enforced in the same manner and notice of the same shall be given in the same manner as may be provided by law for enforcing liens of mechanics and others against real estate; that all other liens and mortgages on such leaseholds shall be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages upon real estate; that after sale of the property there shall be no redemption; and that the sheriff shall make formal conveyance of all the property so sold to the purchaser in one deed of conveyance. Section 58–301 provides in pertinent part that every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an ac-

tual and continued change of possession of the things mortgaged, shall be absolutely void as against creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds of the county in which the mortgaged property is located. Section 58–302 provides that upon receipt of such an instrument, the register of deeds shall endorse on the back thereof the time of its receipt and shall file it in his office, to be kept there for the inspection of all persons interested. Sections 58–303 and 58–304 relate to the filing of renewal affidavits. Section 58–305 pertains to the admissibility of evidence of a certified copy of such an instrument, including any affidavit of renewal. Section 58–306 provides that the register of deeds shall keep a book in which shall be entered a minute of all mortgages of personal property and affidavits filed, and shall keep an index of such book in the manner required of other records. Section 58–308 provides that when a mortgage of personal property shall have been fully paid or satisfied, it shall be the duty of the mortgagee, his assignee, or personal representative, to enter or cause satisfaction thereof to be entered of record as nearly as may be in the same manner as satisfactions of mortgages of real estate are entered. Section 67–221 provides that every instrument in writing that conveys real estate, or whereby real estate may be affected, proved or acknowledged, and certified in the manner thereinafter prescribed, may be recorded in the office of register of deeds of the county in which the real estate is situated. Section 67–222 provides that every such instrument shall, from the time of its filing for record, impart notice to all persons of the contents thereof; and that all subsequent purchasers and mortgagees shall be deemed to purchase with notice. And section 67–223 provides that no such instrument shall be valid, except as between the parties thereto and others having actual notice thereof, until it shall be deposited for record.

■■ Under the law of Kansas, a conventional oil and gas lease does not create any present vested estate in the nature of title to the land which it covers or to the oil and gas in place. It merely creates a license to enter upon the land and explore for such minerals, and if they are discovered to produce and sever them. Kansas Natural Gas Co. v. Board of Commissioners of Neosho County, 75 Kan. 335, 89 P. 750; Eastern Ohio Oil Co. v. McEvoy, 75 Kan. 515, 89 P. 1048; Phillips v. Springfield Crude Oil Co., 76 Kan. 783, 92 P. 1119; Beardsley v. Kansas Natural Gas Co., 78 Kan. 571, 96 P. 859; Robinson v. Smalley, 102 Kan. 842, 171 P. 1155; National Supply Co. v. McLeod, 116 Kan. 477, 227 P. 350. And it has been said in general language that an oil and gas lease is personal property. Burden v. Gypsy Oil Co., 141 Kan. 147, 40 P.2d 463; Fry v. Dewees, 151 Kan. 488, 99 P.2d 844; Connell v. Kanwa Oil, Inc., 161 Kan. 649, 170 P.2d 631; Wilson v. Holm, 164 Kan. 229, 188 P.2d 899. But that general statement contained in each of these cases must be read in the context of its setting. It is not to be lifted out of context and viewed as inflexible and unyielding. In each instance, its scope and effect must be weighed in the light of the facts and the nature of the action. None of the cases dealt with the question whether a mortgage covering an oil and gas leasehold should be recorded in the mortgage records of the county in which the property is situated or filed and entered of record as a chattel mortgage. The first case was an action for partition of real and personal property; the second was a proceeding for partition of real estate and mineral rights therein; the third was a suit for specific performance of an alleged agreement for the sale of an interest in an overriding royalty interest in a mineral leasehold; and the fourth was an action to quiet title to a mineral estate in land. None of them involved directly or indirectly any question in respect to the difference in effect of recording a mortgage covering an oil and gas leasehold in the mortgage records of the county in which the property is situated or of filing and entering it upon the chattel mortgage records.

■ While keeping in the scale for appropriate weight all of the several statutory provisions to which reference has been

made, manifestly it must be borne steadily in mind with emphasized importance that section 67–221, supra, is not limited in scope to the recording in the manner provided by law of instruments in writing which convey real estate. It expressly includes instruments whereby real estate may be affected. And by reference, the two succeeding sections necessarily include instruments of that kind. For reasons of policy satisfactory to itself, the legislature brought within these statutory provisions instruments which convey real estate and also instruments whereby real estate may be affected. The penetrating significance of that calculated action on the part of the legislature is not to be minimized or dismissed from consideration. And it is not the province of this court to give to the statute a narrow interpretation out of harmony with the designed purpose and intent of the legislature.

■ In Derby Oil Co. v. Bell, 134 Kan. 489, 7 P.2d 39, 40, the action was to cancel an oil and gas lease. The court said "R.S. 67–223 provides as follows: 'No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record.' The words 'such instrument' mean 'every instrument in writing that conveys real estate, or whereby real estate may be affected.' R.S. 67–221. It has been held that an oil and gas lease is such an instrument as comes within the terms of that statute. Mills-Willingham Law of Oil and Gas, 236." In Peatling v. Baird, 168 Kan. 528, 213 P.2d 1015, the action was for specific performance of a contract for the purchase of real estate. The contract provided that the seller should furnish an abstract showing merchantable title to the property. The abstract disclosed an oil and gas lease which had been recorded. The court said, "It may be conceded without elaboration that the lease was a conveyance of such an interest in the real property described that the recording of it imparted notice to all subsequent purchasers in accord with G.S.1935, 67–222, see Derby Oil Co. v. Bell, 134 Kan. 489, 7 P.2d 39, and that when recorded, it constituted an incumbrance to the extent of its terms." In Bennett v.

Christy, 137 Kan. 376, 20 P.2d 813, 815, the court had before it the validity of an assignment of an oil and gas lease which had been recorded. And the court took occasion to use the language "As to the feature of lis pendens and the failure of Allen to record the assignment of the lease to him until five days before the final judgment was rendered and execution issued against the lease, it should be noted that both parties recognize that an assignment of an interest in an oil and gas lease is governed by the recording acts relating to real property (R.S. 67–221 and 67–223), as was held in Derby Oil Co. v. Bell, 134 Kan. 489, 7 P.2d 39." In Baxter v. Cherryvale Oil Co., 111 Kan. 621, 208 P. 568, a mortgage covering an oil and gas leasehold was given priority over laborers' liens for labor performed after the execution of the mortgage. And in Troxell v. Cleveland Oil Co., 145 Kan. 658, 66 P.2d 545, 547, the action was to determine the rights of plaintiff in certain oil and gas leaseholds. The court used this pointed language, "In connection with this contention, he argues that the leaseholds are personal property, citing Burden v. Gypsy Oil Co., 141 Kan. 147, 150, 40 P. 2d 463, and that the exception to the above rule created by G.S.1935, 60–1802, permitting quieting of title against a real estate mortgage barred by the statute of limitations, has no application here, and hence the trial court erred. We cannot agree with this contention and believe the matter is controlled by statute. In 1923, our statutes with reference to oil and gas were revised in part, and to provide definite means of foreclosing liens. In what now appears as G.S.1935, 55–210, after providing for enforcement of labor and mechanic's liens against owners of leaseholds, it is stated: 'All other liens and mortgages on leaseholds for oil and gas purposes shall be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages against real estate.' We believe the intention of the Legislature was to place liens on oil and gas leaseholds in the same status as liens on real estate generally, save as to rights of redemption as provided in the last above statute. So considered, it would appear that affirmative action may be taken to remove the cloud on the title

occasioned by a lien barred by the statute of limitations." The case of Continental Supply Co. v. Marshall, 10 Cir., 152 F.2d 300, 306, certiorari denied, 327 U.S. 803, 66 S.Ct. 962, 90 L.Ed. 1028, involved the rights of parties under oil and gas leases covering property in Oklahoma, but the recording statutes of that state are not substantially dissimilar from those in Kansas. It was said in that case "An oil and gas lease or any assignment thereof requires all the formalities of a conveyance of any other interest in real estate, and it must therefore be acknowledged and recorded as an instrument relating to real estate in order to impart notice under Section 15, Title 16 O.S.A., Davis v. Lewis, 187 Okl. 91, 100 P.2d 994; Tupeker v. Deaner, 46 Okl. 328, 148 P. 853. See also Thornton Oil and Gas, Vol. 1, Sec. 36. It follows that a mortgage on an oil and gas lease must likewise be recorded as a real estate mortgage to constitute effective notice under the statute, and must therefore be regarded as a real estate mortgage under Oklahoma law." While the question is not free from doubt, we think it is fairly clear that a mortgage covering an oil and gas leasehold in Kansas which is recorded in the mortgage records of the county wherein the property is situated but not filed and entered upon the chattel mortgage records fixes and fastens a lien upon the property effective from the date of the filing and recording of the mortgage as against a subsequently appointed trustee in bankruptcy.

The parties discuss the effect of the division orders and transfer orders which the bankrupt executed and delivered in accordance with the provisions contained in the mortgage. The orders were in the conventional form of common usage in the crude oil production industry. They were addressed to the pipe line company; were signed by the bankrupt; and directed the pipe line company to give credit to the bank for the share in the oil produced from the premises which otherwise would be due the bankrupt. As contemplated by the parties, the orders were delivered to the pipe line company; the interest in the oil produced to which the orders referred was delivered to the pipe line company; until shortly before the intervention of bankruptcy, the pipe line company accounted currently to the bank; and the bank received and applied on its loan to the bankrupt the proceeds received through that channel in conformity with the provisions contained in the note and mortgage. The orders did not contain language expressly assigning in formal terms to the bank the share in the oil belonging to the bankrupt or the proceeds therefrom. But the parties mutually contemplated and it was implicit in their action that the share of the oil belonging to the bankrupt would be delivered to the pipe line company; that instead of accounting therefor to the bankrupt, the pipe line company would account directly to the bank; and that the bank would make application of the amounts received in accordance with the provisions contained in the note and mortgage. There can be no doubt that if an action had been instituted to foreclose the mortgage, the court in the exercise of its equitable power could have directed payment directly to the bank of the proceeds from the share in the oil belonging to the bankrupt. Instead of the proceeds being channeled into the hands of the bank through judicial action of that kind, the parties mutually agreed that the proceeds would be paid directly to the bank and applied on the note. Under the provisions of the mortgage and the division and transfer orders, the bank was in effect a mortgagee in constructive possession of the bankrupt's share of the oil, as and when produced, with full rights to the proceeds therefrom. Kershaw v. Squier, 137 Kan. 855, 22 P.2d 468. Being in effect a mortgagee in constructive possession of the share in the oil, as and when produced, with full right to the proceeds therefrom, the rights of the bank were prior and superior to those of a garnisheeing creditor, Farmers' Union Jobbing Association v. Sullivan, 137 Kan. 196, 19 P.2d 476; Kershaw v. Squier, supra. And therefore its rights were prior and paramount to those of the trustee in bankruptcy.

On his appeal, the trustee contends that oil and gas in place, being migratory in character and remaining as real property until severed, is not the subject of chattel mortgage. The argument is that until oil is found it has only potential ex-

istence; that prior to its discovery it has no actual existence; that preceding its discovery the lessee has no ownership of it; and that therefore the lessee cannot give a valid mortgage upon it. It is the general rule in Kansas that except as modified by statute, a valid chattel mortgage cannot be given unless the property actually exists and belongs to the mortgagor. T. B. Townsend Brick & Contracting Co. v. Allen, 62 Kan. 311, 62 P. 1008, 52 L.R.A. 323. But here the referee expressly found that the leased territory was capable of producing oil; and that at the time of the execution of the mortgage, the leasehold interests mortgaged were either producing oil or were in proven or semi-proven territory. That amounted to a finding in different language that at the time of the execution of the mortgages, oil was being produced from the mortgaged premises or its existence was a matter of reasonable deduction and conclusion, based upon recognized scientific factors usually employed in determining the question. The non-existence of oil was not a known fact within the intent and meaning of the rule upon which the trustee relies. The reasonable conclusion that oil actually existed at the time of the execution of the mortgages, and the rights of the bankrupt in it when produced and reduced to possession, were sufficient to sustain the mortgages as against the attack presently made upon them.

The order appealed from is reversed and the causes are severally remanded with direction to enter judgment in harmony with the views expressed in this opinion.